Dax D. Anderson (UBN 10168)
James T. Burton (UBN 11875)
**KIRTON McCONKIE**
60 East South Temple, Suite 1800
Salt Lake City, Utah 84111
Phone: (801) 328-3600
Fax: (801) 321-4893
Email: danderson@kmclaw.com
Email: jburton@kmclaw.com

*Attorneys for Plaintiff*
*Venturi Jet Sets, Inc.*

---

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| VENTURI JET SETS, INC., a Utah Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CUSTOM MOLDED PRODUCTS, INC., a Georgia corporation, and JOHN DOES 1-10, <br><br> Defendants. | **PLAINTIFF VENTURI JETSETS, INC.'S OPENING CROSS-MOTION FOR CLAIM CONSTRUCTION AND MEMORANDUM IN SUPPORT** <br><br> Case No.: 2:13-CV-01031-TS-EJF <br><br> Hon. Judge Ted Stewart <br><br> Hon. Magistrate Judge Evelyn J. Furse |

Pursuant to Federal Rule of Civil Procedure 7, DUCivR 7-1, and the Court's "Amended Scheduling Order,"[1] Plaintiff Venturi Jet Sets, Inc. ("Venturi"), by and through undersigned counsel, hereby respectfully submits this Opening Cross-Motion for Claim Construction (hereinafter, the "Motion") and Memorandum in Support of Venturi's proposed constructions for the claim terms in dispute.

---

[1] See Docket Entry ("D.E.") #22 (Scheduling Order and Order Vacating Hearing) at ¶ 4(c) (deadline for cross-claim construction motions and joint appendix); D.E. # 33 (Amended Order Granting in Part and Denying in Part Motion to Amend Scheduling Order) at 1 (amendment).

## INTRODUCTION

This is a patent case.  While patent cases often involve complex technologies, often with subtle, specialized and highly technical nuances, this particular case involves comparatively simple technology, which is set forth within the patent-in-suit in common, everyday language easily accessible to lay members of the public.  In simplest terms, the technology at issue is a device for providing compact clusters or groups of pressure jets for a hot tubs, swimming pools, or the like.  While claim construction is an indispensable requirement of virtually every patent litigation, the Federal Circuit has aptly recognized that "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.[2]  Such is precisely the case at bar.  As such, with few exceptions, the instant Motion largely turns on "little more than the application of the widely accepted meaning of commonly understood words."[3]  To this end, Venturi respectfully submits the instant Motion and urges the Court to adopt the constructions proposed herein for the claim terms in dispute.

## PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS THEREFOR

Venturi respectfully requests that the Court adopt the constructions proposed herein for several terms found within one or more of the asserted claims of the patent-in-suit.  As discussed below, and for the Court's convenience, each of the terms at issue, and Venturi's proposed constructions for the same, have been summarized in Exhibit 3 hereto.  Pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) and its progeny, claim construction, as requested herein, is an issue of law for this Court's determination.

---

[2] Phillips v. AWH Corp., 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (*en banc*).
[3] Id.

## RELEVANT BACKGROUND

**Procedural Background**

In this action, Venturi seeks damages and a permanent injunction for Defendant Custom Molded Products, Inc.'s ("CMP") infringement of claims 1-19 of United States Patent No. 7,766,038 ("the '038 Patent" or "patent-in-suit") to Geddes *et al.*, entitled "Manifold for Multi-Jet Pool Fixture."[4]  As alleged in the Complaint, CMP makes, uses, sells and/or imports various products, including, but not limited to, CMP's Spa Master Jet Array JP4 (the "Accused Products"[5]), that infringe claims 1-19 of the '038 Patent.[6]

In view of the foregoing, and pursuant to the Court's Amended Scheduling Order,[7] the parties have generally exchanged proposed constructions and otherwise met and conferred regarding the disputed claim terms at issue.[8]  As a result of the foregoing process, the parties have respectively identified five (5) claim terms (or phrases) on which this case is most likely to

---

[4] Pursuant to the Court's Amended Scheduling Order (D.E. #s 22 at ¶ 4(c) and 33 at 1), Venturi has concurrently filed herewith a "**Joint Appendix**," comprising an indexed, paginated, searchable, and bookmarked PDF of (1) the '038 Patent, (2) the prosecution history for the '038 Patent, and (3) the prosecution history for the provisional patent application to which the '038 Patent claims priority, in reverse chronological order, respectively.  Subsequent references to these materials refer to the common page numbering of the Joint Appendix with pin citations to the '038 Patent in the format XX:YY-YY, where XX is the column number and YY-YY are the line numbers where the cited material can be found.

[5] While CMP's Accused Products must ultimately be evaluated as part of the eventual and necessary infringement analysis in this case, such products are irrelevant for purposes of claim construction.  Indeed, infringement is question of fact for the jury.

[6] See D.E. #2 at ¶¶ 8-15.

[7] See D.E. #s 22 at ¶ 4(a) – (b) and 33 at 1.

[8] See Ltr. from D. Anderson to S. Risley, dated Dec. 2, 2014; Defendant Custom Molded Products, Inc.'s Proposed Patent Claim Terms for Construction dated Dec. 2, 2014; Ltr. from D. Anderson to S. Risley, dated Dec. 8, 2014; Defendant Custom Molded Products, Inc.'s Preliminary Claim Constructions dated Dec. 9, 2014; Ltr. from R. Dulaney to D. Anderson, dated December 9, 2014; Email correspondence dated Dec. 8-9, 2014 (collectively, attached hereto as **Exhibit "1"**).

turn, resulting in a total of ten (10) claim terms (or phrases) to be construed by the Court.[9]
Specifically, Venturi has identified the following five (5) terms for construction by the Court:

1. lobe;
2. indentation;
3. lobed polygon;
4. opening(s); and
5. corner.[10]

And, for its part, CMP has identified the following five (5) terms (or phrases) for construction by the Court:

6. "an indentation between each lobe" / "an indentation disposed between each lobe";
7. "each indentation being positioned closer to a center point of the central chamber than each lobe";
8. "each lobe carries an opening in the front jet interface surface" / "wherein each lobe carries an opening in the front jet interface surface";
9. "each opening disposed in a different lobe"; and
10. "outlet."[11]

Pursuant to the Court's Amended Scheduling Order,[12] Venturi respectfully submits this Opening Cross-Motion for Claim Construction in support of Venturi's proposed constructions for the ten (10) terms (or phrases) listed above, for which construction is necessary.  For the Court's convenience, each of the disputed terms at issue, and Venturi's proposed constructions for the same, are summarized and succinctly set forth in **Exhibit "3"** hereto.

## Summary of the '038 Patent

The specification of the '038 Patent constitutes *the* key lens through which claim construction must be conducted.  Relevant aspects of the specification of the '038 Patent are generally summarized below.

---

[9] See Email correspondence dated Dec. 16, 2014; Defendant Custom Molded Products, Inc.'s Five (5) Patent Claim Terms or Phrases for Construction, dated January 9, 2015 (collectively, attached hereto as **Exhibit "2"**).

[10] See id.

[11] See id.

[12] See D.E. #s 22 at ¶ 4(c) and 33 at 1.

The '038 Patent, which issued on August 3, 2010, was filed February 1, 2008, and claims priority to Provisional Patent Application No. 60/891,017 (hereinafter "Provisional").

      1.   <u>General Disclosure of the '038 Patent Specification</u>

Generally speaking, the '038 Patent specification discloses straightforward innovations set forth in language easily accessible even to lay members of the public and jury.  The '038 Patent discloses and describes improvements for providing "a manifold device for multi-jet pool fixture[s] or pressure jet cluster[s] for a hot tub, swimming pool, water fountain, or the like."[13]

As the '038 Patent explains, "[h]ot tubs, spas swimming pools, and the like often have pressure jets that shoot jets of water into a water basin or pool area."[14]  Clustering or otherwise grouping together pressure jets for "therapeutic purposes … in a hot tub, or aesthetic purposes in a water fountain" presents distinct advantages. [15]  However, space constraints and pool component longevity / strength (among other concerns) often limit the proximity and/or number of pressure jets which can feasibly be grouped together.[16]  The present invention solves this problem.

The '038 Patent discloses and describes an improved "manifold device" to facilitate clustering or grouping pressure jets together in a relatively confined space.[17]  More particularly, the '038 Patent states as follows:

> The embodiments of the present invention described herein generally provide a manifold device for a multi-jet pool fixture or pressure jet cluster for a hot tub, swimming pool, water fountain, or the like.  The manifold device as described in this disclosure can have a central chamber with an inlet and outlet in fluid communication with the central chamber.  The central chamber can also have a plurality of openings to direct water from the chamber to a plurality of pressure jets.  The openings can be located on one side or face of the central chamber so

---

[13] Appx. at 9, 2:24-27; <u>see also</u> <u>id.</u> at 1, Abstract; 9, 1:47-61 (Summary of the Invention).
[14] <u>Id.</u> at 9, 1:12-14.
[15] <u>Id.</u> at 9, 1:14-16.
[16] <u>Id.</u> at 9, 1:21-43.
[17] <u>See</u> <u>id.</u> at 1, Abstract; 9, 1:47-61 (Summary of the Invention); 9, 2:24-27; 11, 5:7-34 .

that the openings are coplanar and maintain relatively constant pressure for each of the openings. The manifold device can also be shaped to facilitate flow of an aggregate hardening material around the manifold device during installation so that the device can be anchored to an aggregate basin or pool liner.[18]

The specification of the '038 Patent goes on to describe various embodiments of the invention "in conjunction with … accompanying drawings, which together illustrate … features of the invention."[19] For example, and in order to facilitate the following discussion, Figures 1 and 6 of the '038 Patent are reproduced below.[20]



FIG. 1

---

[18] Id. at 9, 2:14-38.
[19] Id. at 9, 1:57-61.
[20] Id. at 2, FIG. 1; 7, FIG. 6.



FIG. 6

With reference to Figure 1, the '038 Patent states as follows:

a manifold device, indicated generally at 10, in accordance with an embodiment of the present invention is shown for use in providing a hot tub, swimming pool, spa, water fountain or the like with a multi-jet pool fixture, or pressure jet cluster. The manifold device 10 can have a central chamber indicated generally at 20, an inlet 30, an outlet 40, [a back surface 22, an opposing jet interface surface 24, side walls 26,] and a plurality of openings indicated generally at 50.[21]

Elsewhere, the '038 Patent further describes the above-identified features of some embodiments of the manifold device, or describes additional features of such devices.

---

[21] Id. at 9, 2:39-46; see also id. at 9, 2:47-59.

2.    Disclosure re: Outlets and Openings

For example, the '038 Patent further describes outlet 40 as follows:  "outlet 40 can be disposed in the side wall 26b directly opposite the inlet 30" such that "inlet 30 and outlet 40 may be positioned to be substantially in line with one another" according to some embodiments.[22] Similarly, the '038 Patent further describes the openings 50 as follows:  "The central chamber [20] can also have a plurality of openings [50] to direct water from the chamber to a plurality of pressure jets[; t]he openings can be located on one side or face of the central chamber so that the openings are coplanar and maintain relatively constant pressure for each of the openings."[23]  The '038 Patent also states that, in some embodiments, the openings 50 "can be substantially circular and can have a tubular flange 52 extending away from the jet interface surface 24."[24]  Not to be confused with the outlet 40, in the singular, the '038 Patent also frequently describes the openings 50 as "**outlets**," in the plural.[25]

3.    Disclosure re: Lobes and Indentations

In addition, the '038 Patent describes additional features of the manifold device, such as the shape of the central chamber.  For example, according to some embodiments, the '038 Patent discloses the following:

> the central chamber 20 can have a top cross sectional shape that can facilitate flow through the chamber 20 and placement along a basin or pool liner.  For example, the top cross sectional shape of the central chamber 20 can be a circle, a triangle, a quadrangle, a polygon, an oval, a cloverleaf, a diamond, or a lobed polygon. The shape of the central chamber 20 can determine the placement of each of the plurality of openings 50.  Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a **top cross sectional shape of a lobed polygon with a lobe 54 forming each corner of the polygon and an indentation 56 between each lobe 54**.  Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern. Additionally, each lobe 54 can be sized and

---

[22] Id. at 10, 3:11-19.
[23] Id. at 9, 2:29-34; see also id. at 10, 3:44-57.
[24] Id. at 10, 3:44-47.
[25] See id. at 10, 4:35-37 (describing "outlets 50"); 11, 5:8-12 (same).

shaped to carry one of the plurality of openings 50 in the front jet interface surface 24.  Each indentation 56 can be sized and shaped to facilitate flow of an aggregate hardening material around the manifold device 10.  For example, the indentations 56 can be positioned closer to the center point 58 of the central chamber 20 than each lobe 54…. [26]

The '038 Patent continues by describing how the devices described therein are used in practice, according to some embodiments.  For example, the specification states that,

> In use, water can flow into the central chamber 20 through the inlet 30 and can fill the central chamber.  Water can then flow from the central chamber out the plurality of openings 50 and into the pressure jets 60.  The pressure jets can accelerate the stream of water flowing from the outlets and shoot the water into the hot tub or pool.  ….  With the central chamber 20 filled with water and water flowing out the plurality of openings 50, water can also flow out the outlet 40 and toward additional manifold devices in the hot tub or pool.[27]

Additional benefits of the devices disclosed and described in the '038 Patent are further elucidated in the specification thereof.[28]  The '038 Patent concludes with 19 patent claims.[29]  Venturi contends that at least one of CMP's Accused Products is covered by each of claims 1-19.[30]

---

[26] Id. at 10, 3:58 – 4:11 (emphasis added).
[27] Id. at 11, 5:7-18.
[28] See id. at 11, 5:19-34.
[29] See id. at 11 – 12, 5:61 – 8:21.
[30] See D.E. #2 at ¶¶ 8-15.

**ARGUMENT**

## I.     LEGAL PRINCIPLES BEARING ON CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."[31]  The purpose of "claim construction" is to make an objective assessment about what a person having ordinary skill in the art (hereinafter, a "PHOSITA"), at the time the patent was filed, would have understood to be the meaning employed by the patentee for the words in the claims.[32]  Notably, a PHOSITA is neither a layman nor a person of extraordinary skill in the art, but is instead one having ordinary skill in the art.[33]  Regardless, claim construction is an issue of law for the court's determination.[34]

Claim construction is characterized by a focus on "how the patentee used the claim term in the claims, specification, and prosecution history . . . ."[35]  Notably, a patentee often uses words in a claim in the same way that those of ordinary skill in the art use such words; therefore, the words of a claim are "'generally given their ordinary and customary meaning.'"[36]  Thus, "[t]he

---

[31] Phillips v. AWH Corp., 415 F.3d 1303, 1312, 1323 (Fed. Cir. 2005) (*en banc*) (internal quotation marks omitted); see also Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996) ("The written description part of the specification itself does not delimit the right to exclude"); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339 (1961) ("the claims made in the patent are the sole measure of the grant"); McCarty v. Lehigh Valley R.R. Co., 160 U.S. 110, 116; 16 S.Ct. 240, 40 L.Ed. 358 (1894) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim . . ., we should never know where to stop").

[32] See Phillips, 415 F.3d at 1313-17, 1321-23.

[33] See Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 454 (Fed. Cir. 1985) (recognizing inventors as meeting or exceeding the qualifications of a PHOSITA); Envtl. Designs, Ltd. v. Union Oil Co. of Ca., 713 F.2d 693, 697 (Fed. Cir. 1983).

[34] Markman, 52 F.3d at 976-79.

[35] Phillips, 415 F.3d at 1321.

[36] Id. at 1312 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

inquiry into how a [PHOSITA] understands a claim term provides an objective baseline from which to begin claim interpretation."[37]  Indeed, the Federal Circuit in <u>Phillips</u> held that

> [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a [PHOSITA] . . . as of the effective filing date of the patent application . . . .  In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  ….  In such circumstances, general purpose dictionaries may be helpful.[38]

Where the meaning of a claim term as understood by a PHOSITA may not be "immediately apparent, … the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'"[39]  Such sources include, *inter alia*, "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art," including inventor testimony.[40]  "Because dictionaries . . . endeavor to collect the accepted meanings of terms used in various fields . . . , those sources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention."[41]  At bottom, while "the specification is . . . the primary basis for construing the claims,"[42] "there is no magic formula or catechism for conducting claim construction."[43]  Indeed, the court, in its sound discretion, may consider (in any sequence) any sources that "the court deems . . . helpful in determining the true meaning of language used in the

---

[37] <u>Id.</u> at 1313.

[38] <u>Id.</u> at 1313-14 (citing <u>Brown v. 3M</u>, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation")); other citations omitted).

[39] <u>Id.</u> at 1314 (quoting <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

[40] <u>Id.</u> (internal quotation marks omitted); <u>see</u> <u>id.</u> at 1317.

[41] <u>Id.</u> at 1318.

[42] <u>Id.</u> at 1315.

[43] <u>Id.</u> at 1324.

2

patent claims."[44]  Such sources must be used to ascertain the ordinary and customary meaning of a term, not to contradict "meaning that is unambiguous in light of the intrinsic evidence."[45]

Notably, "the context in which a term is used in the asserted claim can be highly instructive."[46]  For example, the meaning of a term will usually be consistent with the context in which it appears and with other terms and phrases in the claim.[47]  Likewise, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."[48]  Indeed, it has been held that "[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."[49]  Moreover, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."[50]

Beyond looking to other claims, asserted or otherwise, the written description and the figures of the specification are useful in ascertaining the operative meaning of claim language.[51]  Simply put, the claims "do not stand alone" but are "part of a fully integrated written instrument … consisting principally of a specification" and "claims must be read in view of the specification [] of which they are a part."[52]  Indeed, "the specification is always highly relevant to the claim

---

[44] Id. at 1318 (internal quotation marks omitted); see id. at 1319, 1324.

[45] Id. at 1324; see also id. at 1321, 1325-26; Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249 (Fed. Cir. 1998) (a patent-specific meaning that departs from the ordinary and customary meaning of a term must be supported by an express definition, or a definition by clear implication, found within the intrinsic record).

[46] Phillips, 415 F.3d at 1314.

[47] See Renishaw, 158 F.3d at 1251 ("[T]he claim itself precludes us from viewing 'when' as requiring signaling at the precise moment of contact, for some deflection must occur before signaling.").

[48] Phillips, 415 F.3d at 1314.

[49] Id.

[50] Phillips, 415 F.3d at 1315; see also Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004).

[51] See id. at 1315, 1321.

[52] Id. at 1315 (internal citations and quotation marks omitted).

construction analysis" and "it is usually dispositive; it is the single best guide to the meaning of a disputed term"—"the specification is … the primary basis for construing the claims."[53]  To this end, an interpretation that prevents the claim from encompassing at least one embodiment (or example) disclosed in the specification is "rarely, if ever, correct."[54]  Further to this point, "[t]he drawing in a non-provisional application must show every feature of the invention specified in the claims."[55]  Accordingly, the figures set forth within the specification illuminate the operative meaning of claim language.

In summary, the process of claim construction must take into account a number of factors.  In the end, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be . . . the correct construction."[56]

## II.   THE COURT SHOULD ADOPT VENTURI'S PROPOSED CONSTRUCTIONS FOR THE DISPUTED TERMS AT ISSUE

### A.   Disputed Claim Terms

The parties identified the following terms for construction:  (1) lobe;[57] (2) indentation;[58] (3) lobed polygon;[59] (4) opening(s);[60] (5) corner;[61] (6) "an indentation between each lobe" / "an

---

[53] Id. (internal citations and quotation marks omitted).

[54] Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1355 (Fed. Cir. 1998) (internal quotation marks omitted).

[55] 37 C.F.R. § 1.83(a); see Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301 (Fed. Cir. 1999) (construing claims in the context of "the specification and drawings" (citing M.P.E.P. 608.02(d)); see also Smith v. Snow, 294 U.S. 1, 14 (1935) ("if the claim were fairly susceptible to two constructions, that should be adopted which will secure to the patentee his actual invention"); Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."); Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1305 (Fed. Cir. 2007) (rejecting proposed claim interpretation that would exclude disclosed examples in the specification).

[56] Phillips, 415 F.3d at 1316 (quoting Renishaw, 158 F.3d at 1250); see also Markman, 517 U.S. at 389-90; Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1373-74 (Fed. Cir. 2004) (terms are to be given their "broadest ordinary meaning consistent with the written description"); see also 35 U.S.C. § 282 (patent and each claim thereof presumed valid); In re Swanson, 540 F.3d 1368, 1377 (Fed. Cir. 2008) (same); Phillips, 415 F.3d at 1327 (claims should be construed to sustain their validity).

indentation disposed between each lobe" (hereinafter, collectively, "Term 6");[62] (7) "each indentation being positioned closer to a center point of the central chamber than each lobe" (hereinafter "Term 7");[63] (8) "each lobe carries an opening in the front jet interface surface" / "wherein each lobe carries an opening in the front jet interface surface" (hereinafter, collectively, "Term 8");[64] (9) "each opening disposed in a different lobe" (hereinafter "Term 9");[65] and (10) "outlet."[66]

**B.     The Court Should Adopt Venturi's Proposed Constructions as Such Constructions find Support both in the Intrinsic and Extrinsic Record**

    **1.     Lobe**

Venturi proposes that the term "**lobe**" be given the following construction:  **the corner of the central chamber comprising a roundish projection or division thereof**.  The Court should adopt the foregoing definition for several reasons.  To begin with, the above-identified construction is principally taken directly from the specification of the '038 Patent.[67] Specifically, in pertinent part, the '038 Patent teaches that "the central chamber 20 can have a top cross sectional shape of a lobed polygon **with a lobe 54 forming each corner of the polygon**," each lobe "extend[ing] away from a center point 58 of the central chamber 20 in a clover leaf

---

[57] See Appx. at 11-12, 5:61 – 8:21 (the term "lobe," or words having similar effect, is found within at least independent claims 1, 14 and 18 of the '038 Patent).

[58] See id. (the term "indentation," or words having similar effect, is found within at least independent claims 1, 14 and 18 of the '038 Patent).

[59] See id. (the term "lobed polygon," or words having similar effect,  is found within at least claim 8 of the '038 Patent).

[60] See id. (the term "openings," or words having similar effect, is found within at least independent claims 1, 14 and 18 of the '038 Patent).

[61] See id. (the term "corner"  is found within at least claim 14 of the '038 Patent).

[62] See id. (Term 6 is found within at least claims 1, 14 and 18 of the '038 Patent).

[63] See id. (Term 7 is found within at least claims 1, 14 and 18 of the '038 Patent).

[64] See id. (Term 8 is found within at least claims 9 and 18 of the '038 Patent).

[65] See id. (Term 9 is found within at least claim 14 of the '038 Patent).

[66] See id. (the term "outlet," in the singular, is found within at least claims 4, 5, 14 and 18 of the '038 Patent).

[67] E.g., Phillips, 415 F.3d at 1315.

pattern."[68]  Venturi's proposed construction finds further support in the drawings of the '038 Patent, including at least Figures 1, 3, 5 and 6, wherein reference number 54 denotes the corners of the central chamber and illustrates a roundish projection or division thereof, thus forming a clover leaf pattern.[69]  Venturi's construction should also be adopted where a PHOSITA would understand the term "lobe" to have the definition provided above.[70]  Likewise, the foregoing definition is consistent with the widely and commonly understood meaning of the word "lobe."[71]

### 2. Indentation

Venturi proposes that the term "**indentation**" be given the following construction:  **the edge of the central chamber that is closer to the center point than the lobe**.  As above, Venturi's proposed construction should be adopted where it is taken principally from the specification and is consistent with the drawings:  "the indentations 56 can be **positioned closer to the center point 58 of the central chamber 20 than each lobe 54**" in a clover leaf pattern.[72]  Venturi's construction finds further support in the understanding of a PHOSITA[73] and is otherwise consistent with the commonly understood meaning of the word "indentation."[74]

### 3. Lobed Polygon

Drawing, in part, on the constructions proposed above for "lobe" and "indentation," Venturi proposes that the term "**lobed polygon**" be given the following construction:  **a lobe forming each corner of the polygon and an indentation between each lobe**.  This construction is directly taken from the specification of the '038 Patent:  "the central chamber 20

---

[68] Appx. at 10, 3:66 – 4:4 (emphasis added).

[69] See id. at 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6.

[70] See Declaration of Brent Geddes in Support of Plaintiff Venturi Jet Sets, Inc.'s Opening Cross-Motion for Claim Construction ("Geddes Decl."), attached hereto as **Exhibits "4"**, at ¶ 9.

[71] See http://dictionary.reference.com/browse/lobe?s=t, last accessed January 22, 2015.

[72] Appx. at 10, 4:9-11 (emphasis added); see also id. at 10, 3:66 – 4:11; 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6.

[73] See Ex. 4 at ¶ 9.

[74] See http://dictionary.reference.com/browse/indentation, last accessed January 22, 2015.

can have a top cross sectional shape of a lobed polygon with **a lobe 54 forming each corner of the polygon and an indentation 56 between each lobe 54**" where "[e]ach lobe 54 … extend[s] away from a center point 58 of the central chamber 20 in a clover leaf pattern."[75]  Moreover, Venturi's proposed construction is consistent with the context in which it appears vis-à-vis other terms of the claims at issue, including "lobe" and "indentation."[76]  Venturi's construction finds further support in the understanding of a PHOSITA[77] and is otherwise consistent with the commonly understood meaning of the words "lobe" and "polygon."[78]

### 4.    Opening(s)

Venturi proposes that the term "**openings**"—and the synonym "outlets," in the plural—be given the following construction:  **hole(s) in the jet interface surface**.  As above, Venturi's construction is directly supported by the specification of the '038 Patent:  "the plurality of **openings 50 can be disposed in the jet interface** surface 24" where "[e]ach of the openings 50 can be substantially circular…" so as to "receive water from the central chamber and direct the flow of the water away from the central chamber."[79]  Venturi's construction finds further support in the understanding of a PHOSITA[80] and is otherwise consistent with the commonly understood meaning of the word "opening."[81]

---

[75] Appx. at 10, 3:66 – 4:4 (emphasis added); see also id. at 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6.

[76] See Phillips, 415 F.3d at 1314; Renishaw, 158 F.3d at 1251; compare, e.g., Appx. at 11, 5:66-67 ("a lobed cross sectional shape with an indentation bewtween each lobe"), with id. at 11, 6:32-35 ("the central chamber has a top cross sectional shape … of a … lobed polygon").

[77] See Ex. 4 at ¶ 9.

[78] See http://dictionary.reference.com/browse/lobe?s=t  &  http://dictionary.reference.com/browse/polygon?s=t, last accessed January 22, 2015.

[79] Appx. at 10, 3:44-47 (emphasis added); 9, 1:53-56; see also id. at 9, 2:29-34; 10, 3:44-57; 10, 4:35-37; 11, 5:7-18; 4, FIG. 3.

[80] See Ex. 4 at ¶ 9.

[81] See http://dictionary.reference.com/browse/opening?s=t, last accessed January 22, 2015.

### 5.      Corner

Venturi proposes that the term "**corner**" be given the following construction:  **the place at which two converging lines or surfaces meet**.  To begin with, while "corner" is not explicitly defined within the '038 Patent, Venturi's construction is wholly consistent therewith— "a lobe 54 form[s] each corner of the polygon."[82]  This is particularly apparent in the '038 Patent drawings.[83]  Regardless, Venturi's construction is consistent with the commonly understood meaning of the word "corner"[84] and finds further support in the understanding of a PHOSITA.[85] Venturi's construction is also consistent with the proposed constructions for "lobe" and "lobed polygon," as discussed previously.[86]

### 6.      Term 6 – "an indentation between each lobe" / "an indentation disposed between each lobe"

Venturi proposes that Term 6, i.e. "an indentation between each lobe" / "an indentation disposed between each lobe," if construed at all, be given the following construction:  **an indentation (as defined) in the space separating each lobe (as defined)**.  At the outset, Venturi does not believe that Term 6 requires independent construction.  Specifically, the key components of Term 6, i.e. "lobe" and "indentation," are already the subject of independent proposed constructions, respectively (discussed, supra).  As such, the only unique component of Term 6 is "between," a word well-within the common vocabulary of lay members of the public. As such, Venturi respectfully submits that Term 6 need not be construed separately and doing so will only serve to confuse, rather than aid, future infringement analyses.  To the extent Term 6 is construed at all, however, Ventrui's proposed construction is consistent with the specification,[87]

---

[82] Appx. at 10, 4:1.

[83] See id. at 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6.

[84] See http://dictionary.reference.com/browse/corner?s=t, last accessed January 22, 2015.

[85] See Ex. 4 at ¶ 9.

[86] See Phillips, 415 F.3d at 1314; Renishaw, 158 F.3d at 1251.

[87] See, e.g., Appx. at 10, 3:66 – 4:4 ("the central chamber 20 can have a top cross sectional shape of a lobed polygon with a lobe 54 forming each corner of the polygon and an indentation 56 *between* each lobe 54" (emphasis added)); 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6.

the commonly understood meaning of the word "between," [88] and is supported by the understanding of a PHOSITA.[89]

### 7. Term 7 – "each indentation being positioned closer to a center point of the central chamber than each lobe"

Venturi proposes that Term 7, i.e. "each indentation being positioned closer to a center point of the central chamber than each lobe," if construed at all, be given the following construction: **the lobe (as defined) extends further from the center point of the central chamber than the indentation (as defined)**. As above, Venturi does not believe that Term 7 requires independent construction. Excising the key components of Term 7, i.e., "indentation" and "lobe," as already subject to independent construction, respectively, the only unique component of Term 7 which remains is "closer," a word well-within the common vocabulary of lay members of the public. Thus, while Term 7 requires no construction, if it is construed at all, Ventrui's proposed construction is consistent with the specification,[90] the commonly understood meaning of the word "closer,"[91] and is supported by the understanding of a PHOSITA.[92]

### 8. Term 8 – "each lobe carries an opening in the front jet interface surface" / "wherein each lobe carries an opening in the front jet interface surface"

Venturi proposes that Term 8, i.e. "each lobe carries an opening in the front jet interface surface," if construed at all, be given the following construction: **each lobe (as defined) contains or is capable of containing at least a portion of an opening (as defined)**. As above, Term 8, apart from constituent elements for which an independent construction has been proposed, only uniquely consists of "carries," a word well-within the common vocabulary of lay

---

[88] See http://dictionary.reference.com/browse/between?s=t, last accessed January 22, 2015.
[89] See Ex. 4 at ¶ 9.
[90] See, e.g., Appx. at 10, 3:66 – 4:4; 2, FIG. 1; 4, FIG. 3; 6, FIG. 5; 7, FIG. 6; see also n.87, supra.
[91] See http://dictionary.reference.com/browse/closer?s=t, last accessed January 22, 2015.
[92] See Ex. 4 at ¶ 9.

9

members of the public.  Thus, while Term 8 need not be, if it is construed, Ventrui's proposed construction is consistent with the specification,[93] the commonly understood meaning of the word "carries,"[94] and is supported by the understanding of a PHOSITA.[95]

### 9.   Term 9 – "each opening disposed in a different lobe"

Venturi proposes that Term 9, i.e. "each opening disposed in a different lobe," if construed at all, be given the following construction:  **each lobe (as defined) has no more than one opening (as defined) or a portion of one opening (as defined)**.  As above, Term 9, apart from constituent elements for which an independent construction has been proposed, only uniquely consists of "disposed" and "different,"  both of which words well-within the common vocabulary of lay members of the public.  Thus, while Term 9 need not be, if it is construed, Ventrui's proposed construction is consistent with the specification,[96] the commonly understood meaning of the words "disposed" and "different,"[97] and is supported by the understanding of a PHOSITA.[98]

### 10.   Outlet

Venturi proposes that the term "outlet," in the singular, be given the following construction:  **an opening or passage by which fluid is let out of the central chamber**.  This construction is consistent with the specification,[99] the commonly understood meaning of the word "outlet,"[100] and is supported by the understanding of a PHOSITA.[101]

---

[93] See, e.g., Appx. at 10, 4:4-6; ("each lobe 54 can be sized and shaped *to carry* one of the plurality of openings 50 in the front jet interface surface 24" (emphasis added)); 4, FIG. 3.

[94] See http://dictionary.reference.com/browse/carry?s=t, last accessed January 22, 2015.

[95] See Ex. 4 at ¶ 9.

[96] See, e.g., Appx. at 10, 4:4-6 ("each lobe 54 can be sized and shaped to carry *one of* the plurality of openings 50 in the front jet interface surface 24" (emphasis added)); 4, FIG. 3.

[97] See http://dictionary.reference.com/browse/disposed?s=t and http://dictionary.reference.com/browse/different?s=t, last accessed January 22, 2015.

[98] See Ex. 4 at ¶ 9.

[99] See, e.g., Appx. at 9, 1:51-53 ("an outlet in fluid communication with the central chamber configured to allow fluid to flow out of the central chamber"); 2-8, FIGs. 1-7.

[100] See http://dictionary.reference.com/browse/outlet?s=t, last accessed January 22, 2015.

## CONCLUSION

For all of the foregoing reasons, Venturi respectfully urges the Court to adopt the constructions provided herein for the ten (10) terms at issue, as summarized in Exhibit 3 hereto.

Dated:  January 23, 2015          Respectfully Submitted,

                                  KIRTON McCONKIE


                                  By:    /s/Dax D. Anderson
                                       Dax D. Anderson
                                       James T. Burton

                                  *Attorneys for Plaintiff*
                                  *VENTURI JET SETS, INC.*

---

[101] See Ex. 4 at ¶ 9.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 23rd day of January, 2015, a copy of the foregoing was filed with the Court's CM/ECF system, which provides service to all counsel of record.

/s/Dax D. Anderson