THOMAS R. VUKSINICK (Utah State Bar No. A3341)
Email: tvuksinick@wnlaw.com
WORKMAN │ NYDEGGER A Professional Corporation
60 East South Temple, Tenth Floor
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

STEPHEN R. RISLEY (*Admitted Pro Hac Vice*)
Email:srisley@srtslaw.com
SMITH RISLEY TEMPEL SANTOS LLC
Two Ravinia Drive
Suite 700
Atlanta, GA 30346
Telephone: (770) 709-0022

Attorneys for Defendant CUSTOM MOLDED
PRODUCTS, INC.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VENTURI JET SETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CUSTOM MOLDED PRODUCTS, INC., <br><br> Defendant. <br><br> And Related Counterclaims. | Civil Action No. 2:13-CV-01031 TS <br><br> **DEFENDANT CUSTOM MOLDED PRODUCTS, INC.'S MOTION FOR CLAIM CONSTRUCTION AND REQUEST FOR HEARING** <br><br> Judge Ted Stewart <br> Magistrate Judge Evelyn J. Furse <br><br> **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ..........................................................................v

I.  INTRODUCTION AND SUMMARY OF ARGUMENT .................................................v

II.  BACKGROUND AND STATEMENT OF FACTS AND ISSUES ....................................v

    A.  VJS's Provisional Patent Application And The Prior Art Williams' Patent.............v

    B.  The VJS '038 Patent-in-Suit ...................................................................... vii

        1.  The Specification of the '140 Patent Application/
            the '038 Patent-in-Suit ...................................................................... vii
        2.  The Prosecution History of the Patent Application
            and the Issued Claims of the '038 Patent-in-Suit ......................................... viii

    C.  The Perspective Of A Person Having Ordinary Skill In The Art..............................x

    D.  VJS's Infringement Contentions ......................................................................x

    E.  The Parties' Claim Construction Positions......................................................... xi

        1.  "lobe" / "each lobe" .......................................................................... xi

        2.  "carries": "each lobe carries an opening in the front jet surface"................... xii

        3.  "disposed in": "each opening disposed in a different lobe" ........................... xii

        4.  "indentation" ................................................................................... xiii

        5.  "each indentation being positioned closer to a center point
            of the central chamber than each lobe........................................... xiv

        6.  "corner"........................................................................................ xiv

        7.  "lobed polygon"................................................................................xv

        8.  "between": "an indentation between each lobe"/
            "an indentation disposed between each lobe"..................................xv

        9.  "opening" / "plurality of openings" ..................................................... xvi

        10. "outlet"......................................................................................... xvi

III. CMP'S PROPOSED CLAIM CONSTRUCTION
     SHOULD BE ADOPTED BY THE COURT..................................................................1

    A.  "lobe" / "each lobe" .......................................................................................1

    B.  "carries": "each lobe carries an opening in the front jet surface" ..............................3

    C.  "disposed in": "each opening disposed in a different lobe"......................................3

    D.  "indentation" ...............................................................................................4

E. "each indentation being positioned closer to a center point of the central chamber than each lobe..........................5

    1. Intrinsic and Extrinsic Evidence ..................5

    2. Indefiniteness ..........................................6

F. "corner"..............................................................8

G. "lobed polygon" ..................................................8

H. "between": "an indentation between each lobe"/ "an indentation disposed between each lobe" .................9

I. "opening" / "plurality of openings"......................9

J. "outlet" ................................................................9

IV.   CONCLUSION..............................................................10

# TABLE OF AUTHORITIES

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999)..................................................................................1

*Callicrate v. Wadsworth Mfg.*,
    427 F.3d 1361 (Fed. Cir. 2005)..............................................................................1, 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)..................................................................................1

*Inter-Med, Inc. v. ASI Med., Inc.*,
    2011 U.S. Dist. LEXIS 101334 (E.D. Wis. Aug. 31, 2011) (unpublished)...................5, 9

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)..............................................................................6, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)..........................................................................................6, 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .................................................................1

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)..................................................................................5

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)................................................................................1, 2

## STATEMENT OF RELIEF SOUGHT

Pursuant to the Amended Scheduling Order (Dkt. 33) Defendant, Custom Molded Products, Inc. ("CMP") hereby files its Motion For Claim Construction And Request For Hearing and respectfully requests that the Court construe the following patent claim terms and phrases as proffered by CMP. CMP also respectfully requests a hearing on these issues.

## I. INTRODUCTION

As set forth by the Federal Circuit, patent claim construction is intended to interpret the terms and phrases of the allegedly infringed patent claims in light of the intrinsic evidence, namely the claims, the patent specification, and the prosecution history, from the perspective of a person having ordinary skill in the art. Claim construction may not, however, be used to rewrite the patent claims, whether to refashion the claims to cover a Defendant's product or to avoid a finding that the claim is indefinite.

## II. BACKGROUND AND STATEMENT OF FACTS AND ISSUES

The sole patent at issue in this lawsuit is U.S. Patent No. 7,766,038 (the "'038 Patent"). The '038 Patent is assigned to the Plaintiff, Venturi Jet Sets, Inc. ("VJS"). The '038 Patent is generally related to a manifold device that allows multiple pressure jets to be positioned in a pool or spa during the construction of the pool or spa. *See* JA, at 9, '038 Patent, Col. 2, lines 24-38.

### A. VJS's Provisional Patent Application and the Prior Art Williams' Patent

VJS initially filed a Provisional Application[1] on February 21, 2007 that described VJS's alleged invention at that time as a manifold device comprising a "jet cluster." JA, at 120,

---

[1] A provisional application is a placeholder patent application that may be filed to establish a patent filing date, but which is automatically abandoned after 12 months. A non-provisional application is a patent application that may issue into a patent if allowed by the Patent Office.

Provisional Application, at 2, line 31- 3, line 1 and at 4, lines 25-27.  VJS, however, VJS was not the first to come-up with the concept of a manifold device comprising a "jet cluster."  Indeed, six (6) months after VJS filed its Provisional Application, VJS was sued by Mr. Jack Williams for allegedly infringing Mr. Williams' patent, U.S. Patent No. 6,804,841 (the "Williams' Patent"), which is directed to a manifold device that comprises an array of water jets for in-ground pools and spas, *i.e.* a "jet cluster."  *See* Exhibit "B," U.S. Patent No. 6,804,841 and Exhibit "C," Complaint in <u>*Williams v. VJS*</u>.  Figure 5 of the prior art Williams' Patent shows a side view of a manifold device that has a rectangular shape:



Figure 7 of the prior art Williams' Patent shows the disclosed rectangular manifold comprising a "jet cluster" installed in the wall of a pool or spa:



FIG. 7

**B.      The VJS '038 Patent-in-Suit**

On February 21, 2008, one year after it filed its Provisional Application, and only two (2) months after the *Williams v. VJS* lawsuit was dismissed, VJS filed the utility patent application that ultimately issued as the '038 Patent-in-Suit.   *See* JA, at 95, Patent Application No. 12/072,140 (the "Patent Application").

**1.      The Specification of the '140 Patent Application/'038 Patent-in-Suit**

VJS did not merely re-file the exact same Provisional Application (which is commonly done) as the Patent Application for the '038 Patent-in-Suit.   Rather, before it filed the Patent Application, VJS added new language to the specification that was not in the Provisional Application and that is directed to the specific shape of the manifold device:

> Additionally, the central chamber **20** can have a top cross sectional shape that can facilitate flow through the chamber **20** and placement along a basin or pool liner. For example, the top cross sectional shape of the central chamber **20** can be a circle, a triangle, a quadrangle, a polygon, an oval, a cloverleaf, a diamond, or *a lobed polygon*. The shape of the central chamber **20** can determine the placement of each of the plurality of openings **50**.

> Thus, as best seen in FIGS. 1, **3**, and **5**, the central chamber **20** can have a top cross sectional shape of a lobed polygon with a lobe **54** forming each corner of the polygon and an indentation **56** between each lobe **54**. Each lobe **54** can extend away from a center point **58** of the central chamber **20** in a clover leaf pattern.

> Additionally, each lobe **54** can be sized and shaped to carry one of the plurality of openings **50** in the front jet interface surface **24**.
>
> Each indentation **56** can be sized and shaped to facilitate flow of an aggregate hardening material around the manifold device **10**. For example, the indentations **56** can be positioned closer to the center point **58** of the central chamber **20** than each lobe **54**, and can provide a pathway for unhardened aggregate material to flow around the manifold **10** in order to surround or enclose the manifold in aggregate material. In this way, the manifold **10** can be rigidly fixed in place in relation to the basin or liner of the hot tub, spa, pool or the like.

JA, at 99-100, Patent Application, at 4, line 28–5, line 11 (emphasis added). These same paragraphs appear in the '038 Patent-in-Suit at column 3, line 58 through column 4, line 18.[2] JA, at 10. VJS's Patent Application also included new claims, known as "original claims," which broadly claimed the various manifold shapes disclosed in the above-cited language. *See* JA, at 103-05, Patent Application, at 8-10.

### 2. The Prosecution History of the Patent Application and the Issued Claims of the '038 Patent-in-Suit

During the prosecution of the Patent Application, the Patent Office rejected most of VJS's originally filed claims based on several prior art patents.[3] *See* JA, at 51-56, July 16, 2009 Patent Office Action. In order to get its claims allowed by the Patent Office, VJS subsequently had to amend its broadest originally filed claims such that all of the claims are limited to the "lobed polygon" shape of a manifold device. In fact, VJS amended its claims such that *every* claim of the '038 Patent requires a central chamber having "a lobed cross sectional shape" or a

---

[2] From this point forward, and in an effort to avoid confusion, citations will be made to the '038 Patent-in-Suit, rather than the Patent Application because the specification of the Patent Application is identical to the specification of the '038 Patent-in-Suit.

[3] The Patent Office rejected VJS's originally filed claims based on Evans, U.S. Patent No. D394,898; Ward, U.S. Patent No. 5,372,160; Sirch, U.S. Patent No. 1,855,258; and Gape, U.S. Patent No. 5,279,003. Despite the then recent lawsuit, VJS failed to disclose the Williams Patent to the Patent Office. *See* JA, at 51-56, July 16, 2009 Office Action.

"cross sectional shape of a lobed polygon," and a "lobe."  JA, at 11-12, '038 Patent Claims 1, 14, and 18.  And, claims 9, 14, and 18 further require that each lobe must contain an "opening."[4]  JA, at 37-44, November 16, 2009 Amendment.

A copy of Figure 3 from the '038 Patent, generally illustrating the "lobes" and the "openings" is copied below.  JA, at 4, '038 Patent FIG. 3 (illustrations in red added).  As set



FIG. 3

forth in the above-cited paragraphs of the '038 Patent specification, each lobe 54 extends "away from a center point 58 of the central chamber 20 in a clover leaf pattern." (illustrated in the dashed red line) JA, at 10, '038 Patent, Col. 4, lines 2-6.  "Additionally, each lobe 54 can be

---

[4] As set forth in the argument section below, because each "lobe" in claims 9, 14, and 18 is required to be large enough to contain an "opening," every "lobe" recited in all of the claims must also be big enough to contain an opening as a matter of law.  *See* page 2, *infra*.

sized and shaped to carry one of the plurality of openings 50 in the front jet interface surface 24."

(illustrated in the solid red line). *Id*.

### C.     The Perspective Of A Person Having Ordinary Skill In The Art

As set forth below, a disputed claim term must be interpreted from the perspective of a person having ordinary skill in the art at the time of the invention. A person of ordinary skill in the art has at least: (1) an undergraduate degree in mechanical engineering, or a related discipline that included coverage of fluid mechanics and general mechanical design; and (2) at least two years of industry experience in the use of fluid mechanics in systems. Exhibit "A," Green Declaration, at ¶¶9-12. CMP's expert witness, Dr. Green, is at least a person of ordinary skill in the art. Id. at ¶ 13; *see also* Curriculum Vitae of Dr. Itzhak Green, attached as Appendix A to the Green Declaration.

### D.     VJS's Infringement Contentions

Even after being ordered by the Court to "provide a complete substantive response to CMP's Interrogatory No. 3" (Dkt 33), the claim chart provided by VJS fails to show what is intended by the claim term "lobe," which term appears in *every* claim of the '038 Patent-in-Suit. Similarly, the claim chart provided by VJS fails construe or show what is intended by the claim phrase "each indentation being positioned closer to a center point of the central chamber than each lobe," which term is potentially dispositive to this case. This phrase is simply ignored in VJS's supplemental response to CMP's Interrogatory No. 3:



| wherein the central chamber has a **lobed sectional shape** with an **indentation** between each lobe, <mark>each indentation being positioned closer to a center point of the central chamber than each lobe;</mark> | |

*See* Exhibit "D," VJS's Supplemental Response to CMP's Interrogatory No. 3, at 5; Exhibit "E,"

VJS's Claim Chart at 2-3 (red arrows in original, yellow highlighting added).

### E. The Parties' Claim Construction Positions

#### 1. "lobe"/"each lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| lobe: 14<br><br>each lobe:<br>1, 9, 14, 18 | "a rounded projection that extends away from the center point of the central chamber and that is large enough to contain an opening (as defined herein)" | Reference number 54. The corner of the central chamber.<br><br>Dictionary.com - a roundish projection or division, as of an organ or a leaf. |

#### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims,

the figures, and the specification of the '038 Patent. In particular, CMP relies on claims 9, 14,

and 18 of the '038 Patent (JA, at 11-12); Figure 3 of the '038 Patent (JA, at 4); column 3, lines

45-47 of the specification of the '038 Patent (JA, at 10); and column 4, lines 2-6 of the

specification of the '038 Patent (JA, at 10).

### ii.     Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction includes paragraphs 24-31 of the Dr. Green's Declaration.  Exhibit "A," Green Declaration, at ¶¶24-31.

### 2.     "carries": "each lobe carries an opening in the front jet interface surface"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 9, 18 | "houses, contains, or includes" | Not defined in the specification.<br>Dictionary.com - to contain or be capable of containing. |

### i.     Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the specification of the '038 Patent.  In particular, CMP relies on claims 9 and 18 of the '038 Patent (JA, at 11-12); column 3, lines 44-47 of the specification of the '038 Patent (JA, at 10); and column 4, lines 4-6 of the specification of the '038 Patent (JA, at 10).

### ii.     Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction for this term includes paragraphs 32-36 of Dr. Green's Declaration.  Exhibit "A," Green Declaration, at ¶¶32-36.

### 3.     "disposed in": "each opening disposed in a different lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 14 | "each lobe (as defined herein) contains one of the plurality of openings (as defined herein)" | the lobe (as construed herein) has no more than a portion of one opening (as construed herein) |

#### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the specification of the '038 Patent.  In particular, CMP relies on claim 14 of the '038 Patent (JA, at 11-12); column 3, lines 44-47 of the specification of the '038 Patent (JA, at 10); and column 4, lines 4-6 of the specification of the '038 Patent (JA, at 10).

#### ii. Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction for this term include paragraphs 32-36 of Dr. Green's Declaration.  Exhibit "A," Green Declaration, at ¶¶32-36.

#### 4. "indentation"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 10, 14, 15, 18 | "an inward notch or depression in the back surface, the front jet interface surface, and a side surface that at least partially separates one lobe (as defined herein) from another lobe" | Reference number 56. The edge of the central chamber that is closer to the center point than the lobe. |

#### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims, the figures, and the specification of the '038 Patent.  In particular, CMP relies on claims 1, 10, and 15 of the '038 Patent (JA, at 11-12); Figures 1, 3, and 5 of the '038 Patent (JA, at 4-6); and column 4, lines 2-15 of the specification of the '038 Patent (JA, at 10).

#### ii. Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction for this position include paragraphs 37-40 of Dr. Green's Declaration.  Exhibit "A," Green Declaration, at ¶¶37-40.

### 5. "each indentation being positioned closer to a center point of the central chamber than each lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 14, 18 | "the center point of the central chamber must be closer (nearer in space) to each indentation (as defined herein) than it is to each lobe (as defined herein)"<br><br>Alternatively: Indefinite. | the lobe (as construed herein) extends further from the center point than the indentation (as construed herein) |

#### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the specification of the '038 Patent.  In particular, CMP relies on claims 1, 14, and 18 of the '038 Patent (JA, at 11-12) and column 4, lines 9-11 of the specification of the '038 Patent (JA, at 10).

#### ii. Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction for this position include paragraphs 41-46 of Dr. Green's Declaration.  Exhibit "A," Green Declaration, at ¶¶41-46.

### 6. "corner"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 14 | "the outermost portion of the lobe (as defined herein) furthest from the center point of the lobe" | Not defined in the specification.<br>Dictionary.com - the place at which two converging lines or surfaces meet. |

### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the specification of the '038 Patent. In particular, CMP relies on claim 14 of the '038 Patent (JA, at 11-12) and column 3, line 66 through column 4, line 4 of the specification of the '038 Patent (JA, at 10).

### 7. "lobed polygon"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 8, 14 | "a multi-sided shape that comprises at least one lobe (as defined herein)" | A lobe forming each corner of the polygon and an indentation between each lobe. |

### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims, the figures, and the specification of the '038 Patent. In particular, CMP relies on claims 8 and 14 of the '038 Patent (JA, at 11-12); Figures 1, 3, and 5 of the '038 Patent (JA at 2, 4, 6), and column 3, line 66 through column 4, line 4 of the specification of the '038 Patent (JA, at 10).

### ii. Extrinsic Evidentiary Sources

The extrinsic evidence supporting CMP's construction for this position includes paragraph 47 of Dr. Green's Declaration. Exhibit "A," Green Declaration, at ¶47.

### 8. "between": "an indentation between each lobe"/"an indentation disposed between each lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| "an indentation between each lobe": 1, 18 | "at a point intermediate of two other points" | Not defined in the specification. |

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| "an indentation disposed between each lobe": 14 | | Dictionary.com - in the space separating. |

### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the figures of the '038 Patent. In particular, CMP relies on claim 14 of the '038 Patent (JA, at 11-12) and Figure 3 of the '038 Patent (JA, at 4).

### 9. "opening"/"plurality of openings"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| "Plurality of openings": 1, 2, 11, 14, 17, 18 <br><br> "Opening" 9, 14, 18 | "Plurality of openings" means <br> "at least two unobstructed spaces" | Reference number 50. Hole(s) in the jet interface surface. |

### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the specification and the figures of the '038 Patent. In particular, CMP relies on column 3, lines 44-51 of the specification of the '038 Patent (JA, at 10) and Figures 3, 5, and 6 of the '038 Patent (JA, at 4, 6, 7).

### 10. "outlet"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 4, 5, 14, 18 | "a hole in one of the side walls that lets water flow out of the central chamber in a | Reference number 50. Hole(s) in the jet interface surface. |

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| | direction that is perpendicular to the water flow direction out of the plurality of openings (as defined herein)" | |

### i. Intrinsic Evidentiary Sources

The intrinsic evidence supporting CMP's construction for this term includes the claims and the specification of the '038 Patent. In particular, CMP relies on claims 1, 4, 5, 14, and 18 of the '038 Patent (JA, at 11-12) and column 3, lines 11-19, lines 36-40, and lines 44-51 of the specification of the '038 Patent (JA, at 10).

## III.   CMP'S PROPOSED CLAIM CONSTRUCTIONS SHOULD BE ADOPTED BY THE COURT

The scope of a patent is determined by the claims. 35 U.S.C. §112, ¶2; *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).   Claim construction requires an examination of the intrinsic record, namely the claim language, the patent specification, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).   A disputed claim term must be interpreted from the perspective of a person having ordinary skill in the art at the time of the invention.   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

### A.   "lobe"/"each lobe"

The meaning of the term "lobe"/"each lobe" is found in the intrinsic evidence.  First, the claims of the '038 require that each "lobe" must contain an "opening" because claim 9 expressly states that "each lobe carries an opening," claim 14 requires that "each opening [is] disposed in a different lobe," and claim 18 requires that "each lobe carries an opening."   JA, at 11-12, '038 Patent Claims 9, 14, and 18.  As it is axiomatic that the claim term "lobe" must be construed to have the same meaning for all claims of the '038 Patent, the term "lobe" must be construed as being at least large enough to contain an "opening."   *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1371 (Fed. Cir. 2005) ("Of course, this court interprets claim terms consistently throughout various claims of the same patent.").   If the term "lobe" is not required to be large enough to contain an "opening," claims 9, 14, and 18 will be rendered non-functional and non-sensical.

Similarly (and consistent with the language of the claims), the specification states that "each lobe 54 can extend away from the center point 58 of the central chamber 20 in a clover leaf pattern" and also that "each lobe 54 can be sized and shaped to carry one of the plurality of openings 50….". JA, at 10, '038 Patent, Col. 4, lines 2-6; Exhibit "A," Green Declaration, at ¶¶25-27. Figure 3, viewed in light of its description in the specification at column 4, lines 2-6, clearly shows where and how each "lobe" 54 extends from a center point 58 and contains an opening 50:



JA, at 4, '038 Patent, FIG. 3 (emphasis added) and at 10, '038 Patent, Col. 3, lines 45-47.

Based on this intrinsic record, a person of ordinary skill in the art would understand that a "lobe"/"each lobe" means "a rounded projection that extends away from the center point of the central chamber and that is large enough to contain an opening." Exhibit "A," Green Declaration, at ¶ 31. *See Vitronics*, 90 F.3d at 1582. ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.").

Both of VJS's two proffered constructions are wrong as neither finds support in the intrinsic record. A "lobe" cannot be construed to mean a "corner" because even according to VJS's own construction of the term "corner," which is "the place at which two converging lines or surfaces meet," a "corner" cannot "extend away from a center point 58" and a "corner" cannot "be sized and shaped to carry one of the plurality of openings 50," as both the claims and the specification require. JA, at 10, '038 Patent, Col. 4, lines 2-6. Moreover, if "lobe" is synonymous with "corner," claim 14's express recitation "of a lobed polygon with a lobe forming each *corner* of the polygon" is redundant and nonsensical.

**B.     "carries": "each lobe carries an opening in the front jet interface surface"**

The specification states that each lobe 54 "can be sized and shaped to carry one of the plurality of openings 50 in the front set interface surface 24." JA, at 10, '038 Patent, Col. 4, lines 4-6. Thus, one of ordinary skill in the art understands that "carries" means to "house" or "contain" such that each lobe is sized and shaped to house or contain an opening. Exhibit "A," Green Declaration, at ¶¶ 32-33 and 35-36.

VJS's proposed construction for "carries" is wrong because nowhere in the intrinsic record does the claim language or the specification state that "carries" may mean "*capable* of carrying," instead of actually housing or containing an opening as expressly stated in the specification and as also shown in the Figures. *See* Exhibit "A," Green Declaration, at ¶¶33 and 35-36.

**C.     "disposed in": "each opening disposed in a different lobe"**

Independent claim 14 recites "a plurality of openings <u>disposed in</u> the jet surface with each opening *<u>disposed in</u>* a different lobe of the central chamber." JA, at 11, '038 Patent, Claim 14

(emphasis added). CMP's construction of "disposed in" to mean "contains" is consistent with both the claim language and the specification's disclosure of how the openings are "disposed in" a lobe. Exhibit "A," Green Declaration, at ¶¶32-36.

VJS's proffered construction is wrong because nowhere in the claims or the specification does it state or suggest that "no more than a portion of" an opening must be in each lobe.[5]

### D. "indentation"

The term "indentation" was not part of the Provisional Application, but was added to the Patent Application. *Compare* JA, at 120-23, Provisional Application *with* JA, at 10, '038 Patent Col. 3, line 58-Col. 4, line 18. The specification states that the indentation may be "between each lobe 54" and further states that each indentation 56 is "sized and shaped to facilitate the flow of an aggregate hardening material around the manifold device" in order to enclose the manifold in the aggregate material and secure it in place for the spa or pool. JA, at 10, '038 Patent, Col. 4, lines 2-15; Exhibit "A," Green Declaration, ¶37. As illustrated in Figure 3 of the '038 Patent, each indentation at least partially separates one lobe from another. *Id.* at ¶39.

The specification is also consistent with dependent claims 10 and 15, which recite that "each indentation is sized and shaped to facilitate flow of an aggregate hardening material around the manifold device." JA, at 11, '038 Patent, at Claims 10 and 15. Thus, one of ordinary skill in the art would understand that the indentation is "an inward notch or depression in the

---

[5] VJS's construction(s) also invites the Court to commit clear error by construing the phrase "disposed in" inconsistently within the same claim. Claim 14 recites "a plurality of openings disposed in the jet interface surface with each opening disposed in a different lobe of the central chamber." JA, at 11, '038 Patent Claim 14 (emphasis added). For the first instance, VJS says "disposed in" means that the jet interface surface contains *the entirety* of the plurality of openings. *See* section III.I, *infra*. For the second instance, however, VJS inconsistently says that "disposed in" means "has *no more than a portion*" of the opening. Such inconsistent constructions of the same claim term in the same claim are clearly erroneous. *See Callicrate*, 427 F.3d at 1371.

back surface, the front jet interface surface, and a side surface that at least partially separates one lobe from another lobe." *See* Exhibit "A," Green Declaration, at ¶40.

VJS's proffered construction of "indentation" is contrary to both the specification and the claims. Moreover, VJS's proposed construction is redundant as claim 1 already states that "the central chamber [] is closer to the center point than the lobe." JA, at 11, '038 Patent Claim 1. *See Inter-Med, Inc. v. ASI Med., Inc.*, 2011 U.S. Dist. LEXIS 101334, at *13 (E.D. Wis. Aug. 31, 2011) (unpublished) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1566-68 (Fed. Cir. 1997)) ("Merely repeating the terms of a disputed claim is not sufficient.").

E. **"each indentation being positioned closer to a center point of the central chamber than each lobe"**

1. **Intrinsic and Extrinsic Evidence**

The Court's construction of this disputed claim phrase is potentially case dispositive. The Parties' dispute concerns whether or not this claim phrase requires the entire "indentation" to be "closer to" the center point of the central chamber than any point of the "lobe." Based on the intrinsic and extrinsic evidence, CMP submits that this claim phrase requires the entire "indentation" to be closer to the center point of the central chamber than is any point of the "lobe." Stated another way, this phrase requires that the entire indentation is closer to the center point than the entirety of the "lobe." As a result, if any portion or point of the "lobe" is closer to the center point of the central chamber than is any portion or point of the "indentation," this claim phrase is not met.

The claims and specification of the '038 patent support CMP's construction. The claims of the '038 Patent always refer to "an indentation," "each indentation," "each lobe" and "the lobe." In other words, the claims always refer to the indentations and lobes <u>as a whole and in</u>

their entirety; and *never* as anything less than the entire indentation or lobe. Exhibit "A," Green Declaration, ¶¶42-44. Likewise, the specification of the '038 Patent states that "[f]or example, the indentations 56 can be positioned closer to the center point 58 of the central chamber 20 than each lobe 54…." JA, at 10, '038 Patent at Col. 4, lines 9-11. Nothing in the specification states, discusses, or suggests anything less than the entire indentation or lobe, or only a portion of an indentation or lobe – in any context, including in the context of determining which is closer to the center point. Exhibit "A," Green Declaration, ¶¶42-44.

VJS's proposed construction is wrong because its use of "further" is the opposite of what the phrase actually says, which is "closer." Moreover, as set forth above, VJS's construction is not supported by the claims, the specification, or the prosecution history of the '038 Patent.

## 2. Indefiniteness

If the Court does not adopt CMP's above-proffered construction, CMP alternatively submits that this claim phrase is indefinite because neither the claims nor the specification allow one of skill in the art to understand what part of the "indentation" must be "closer to" the center point than is what part of the "lobe" with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). (The test for indefiniteness is whether the claims, in light of the specification, "inform those skilled in the art about the scope of the invention with reasonable certainty."). The claims "must provide objective boundaries for those of skill in the art," otherwise the claims are invalid as indefinite. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014). This objective boundary required for definiteness is not provided if the claim language "might mean several different things and 'no informed and

confident choice is available among the contending definitions.'" *Id*. (quoting *Nautilus*, 134 S. Ct. at 2130 n. 8) (additional citations omitted).

Nothing in the specification provides any guidance to one of ordinary skill in the art as to how to determine which part of (and/or how much of) the indention needs to be closer to which part of (and/or how much of) the lobe. *See* Exhibit "A," Green Declaration, at ¶45. Indeed, "closer to" is a relative term and the specification and figures provide no objective boundary or standard for determining what is meant by the phrase "closer to," or how to determine which portion(s) of the "indentation" is "closer to" the center point than which portion(s) of the "lobe."

This lack of an objective standard for the term "closer to" is proven by VJS's own inability to illustrate what is meant by "each indentation being positioned closer to a center point of the central chamber than each lobe." Even after being ordered by the Court to "provide a complete substantive response to CMP's Interrogatory No. 3" (Dkt No. 33), VJS has been unable to show what was meant by this claim phrase or how CMP's products allegedly meet this claim phrase *See* Exhibit "D," VJS's Supplemental Response to CMP's Interrogatory No. 3 at 5; and Exhibit "E," VJS's Claim Chart.

Rather, if this phrase is not construed to require the entirety of each indentation and lobe, the sparse language of the specification may allow this phrase to potentially have several different meanings to one of ordinary skill in the art. Exhibit "A," Green Declaration, at ¶¶44-45. A relative claim phrase that may "mean several different things" and that fails to provide an "informed and confident choice" between the different meanings is indefinite. *Interval Licensing*, 766 F.3d at 1371 (quoting *Nautilus*, 134 S. Ct. at 2130 n. 8) (additional citations omitted).

**F.    "corner"**

Claim 14 recites "a central chamber having a jet interface surface an [sic] a cross sectional shape of a lobed polygon with a lobe forming each corner of the polygon."  Similarly, the specification states that the central chamber can have a cross section shape of a lobed polygon with each lobe 54 "extending away from a center point 58 of the central chamber 20 in a clover leaf pattern" and that each lobe forms "each corner of the polygon."  JA, at 10, '038 Patent, Col. 3, line 66-Col. 4, line 4.  Thus, CMP's definition of "corner," which is "the outermost portion of the lobe furthest from the center point," is consistent with how "corner" is used in the claims and the specification.

VJS's proposed construction is wrong because it ignores the specification and instead improperly relies on a dictionary definition.  Such reliance on extrinsic evidence that flies in the face of the intrinsic evidence is improper.

**G.    "lobed polygon"**

The specification states that "the central chamber 20 can have a top cross sectional shape of a lobed polygon" where the lobes that extend away from the center point 58 of the central chamber "form[] each corner of the polygon."  JA, at 10, '038 Patent, Col. 3, line 66-Col. 4, line 4.  Thus, one of ordinary skill in the art would understand that the lobed polygon is "a multi-sided shape that comprises at least one lobe."  *See* section II.A, *supra*; Exhibit "A," Green Declaration, at ¶47.

In contrast, VJS argues that "lobed polygon" should be defined as "a lobe forming each corner of the polygon and an indentation between each lobe."  VJS's construction, however, is fundamentally flawed because it does not define the term "lobed polygon."  Instead, it

improperly repeats other language already existing in claim 14. JA, at 11, '038 Patent, Claim 14. *See Inter-Med.*, 2011 U.S. Dist. LEXIS 101334, at *13.

**H.    "between": "an indentation between each lobe"/"an indentation disposed between each lobe"**

The figures illustrate that each indentation partially separates one lobe from another. Thus, one of ordinary skill in the art would understand that the term "between" as used in the phrases "an indentation between each lobe" and "an indentation disposed between each lobe" means "at a point intermediate of two other points."

VJS's definition of "between" as "in the space separating" is too inclusive as it would include <u>all</u> of the space separating the two lobes. Such a broad definition cannot be correct as the lobes are not just separated by the indentations as VJS's construction posits. The lobes are also separated in some locations by the jet interface surface itself, as illustrated in Figure 3. JA, at 4, '038 Patent FIG. 3.

**I.    "opening"/"plurality of openings"**

CMP agrees with VJS that "openings" are "holes" in the jet interface surface.

**J.    "outlet"**

The specification states that outlet 40 is a hole that is disposed in one of the side walls the flow of water out of the outlet is parallel to the flow of water into inlet 30. JA, at 10, '038 Patent, Col. 3, lines 11-19; *see also* Figure 3 (showing inlet 30 and outlet 40 with a parallel water flow). Indeed, as the name implies, water flows into the chamber through the inlet and out of the chamber through the "outlet." JA at 10, '038 Patent, Col. 3, lines 36-40. The specification and figures further teach that the flow of water through outlet 40 is "substantially perpendicular to the flow" of water through the plurality of openings 50. JA at 10, '038 Patent, Col. 3, lines 47-

51.  As taught by the specification, claim 4 also states that the "outlet disposed in a different side wall than the side wall with the inlet."  JA, at 11, '038 Patent Claim 4, Col. 6, lines 18-20.  Thus, one of ordinary skill in the art would understand the term "outlet" is "a hole in one of the side walls that lets water flow out of the central chamber in a direction that is perpendicular to the water flow direction out of the plurality of openings."

VJS's proffered construction is contrary to the specification.  An "outlet" is not the same as an "opening."  Rather, the specification clearly states that an "outlet" is a hole in the side wall, while in contrast, and as the Parties agree, an "opening" is a hole in the jet interface surface.  JA, 10, '038 Patent at Col. 3, lines 11-19 and 44-51.

## V.     CONCLUSION

For the above stated reasons, CMP respectfully requests the Court to adopt CMP's proposed constructions.

Respectfully submitted this 23rd day of January, 2015.

By: */s/ Stephen R Risley*

THOMAS R. VUKSINICK (Utah State Bar No. A3341)
Email: tvuksinick@wnlaw.com
WORKMAN │ NYDEGGER A Professional Corporation
60 East South Temple, Tenth Floor
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

STEPHEN R. RISLEY (*Admitted Pro Hac Vice*)
Email:srisley@srtslaw.com
SMITH RISLEY TEMPEL SANTOS LLC
Two Ravinia Drive
Suite 700
Atlanta, GA 30346

Telephone: (770) 709-0022

Attorneys for Defendant Custom Molded Products, Inc.

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on January 23, 2015 with the clerk of the court for the U.S. District Court, District of Utah, Central Division and thereby served on all counsel who have consented to electronic service, including the following counsel:

Dax D. Anderson (danderson@kmclaw.com)
James T. Burton (jburton@kmclaw.com)
KIRTON McCONKIE
60 East South Temple, Suite 180
Salt Lake City, Utah 84111

*/s/ Stephen R. Risley*
Stephen R. Risley