THOMAS R. VUKSINICK (Utah State Bar No. A3341)
Email: tvuksinick@wnlaw.com
WORKMAN │ NYDEGGER A Professional Corporation
60 East South Temple, Tenth Floor
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

STEPHEN R. RISLEY (*Admitted Pro Hac Vice*)
Email:srisley@srtslaw.com
SMITH RISLEY TEMPEL SANTOS LLC
Two Ravinia Drive
Suite 700
Atlanta, GA 30346
Telephone: (770) 709-0022

Attorneys for Defendant CUSTOM MOLDED
PRODUCTS, INC.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VENTURI JET SETS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOM MOLDED PRODUCTS, INC.,<br><br>Defendant.<br><br>And Related Counterclaims. | Civil Action No. 2:13-CV-01031 TS<br><br>**DEFENDANT CUSTOM MOLDED PRODUCTS, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Judge Ted Stewart<br>Magistrate Judge Evelyn J. Furse<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... vi

II.  RESPONSIVE BACKGOUND AND STATEMENT OF FACTS AND ISSUES ........... vi

    A.  A Person Having Ordinary Skill In The Art ("PHOSITA") ................................... vii

    B.  The Relevant Time Frame For The Construction Of The Disputed Terms ............. vii

    C.  The Figures Of The '038 Patent Do Not Show Every Claimed Feature .................. ix

    D.  The Parties' Claim Construction Positions And VJS's Cited Evidence ................. ix

        1.  "lobe"/"each lobe" ........................................................................ ix

        2.  "carries": "each lobe carries an opening in the front
            jet interface surface" ..................................................................... xii

        3.  "disposed in": "each opening disposed in a different lobe" ........................... xiii

        4.  "indentation" ..................................................................................xv

        5.  "each indentation being positioned closer to a center point
            of the central chamber than each lobe" .......................................... xvii

        6.  "corner" ....................................................................................... xviii

        7.  "lobed polygon" ...............................................................................xx

        8.  "between": "an indentation between each lobe"/
            "an indentation disposed between each lobe" ................................... xxii

        9.  "opening" / "plurality of openings" .............................................. xxiii

        10.  "outlet" ..................................................................................... xxiii

III.  VJS'S CONSTRUCTIONS SHOULD NOT BE ADOPTED
    BY THE COURT ........................................................................................... 1

    A.  VJS's Failure To Define PHOSITA Is Fatal To All
        Of VJS's Constructions .............................................................................. 1

    B.  VJS's Constructions Based On The Figures Are Erroneous .................................. 1

    C.  VJS's Extrinsic Evidence Is Inadmissible And/Or Unreliable ............................... 3

    D.  The Intrinsic Evidence Does Not Support VJS's Constructions ............................. 4

        1.  "lobe"/"each lobe" .......................................................................... 5

        2.  "carries": "each lobe carries an opening in the front
            jet interface surface" ....................................................................... 5

        3.  "disposed in": "each opening disposed in a different lobe" .............................. 6

        4.  "indentation" ................................................................................ 6

5. "each indentation being positioned closer to a center point of the central chamber than each lobe"............................7

6. "corner"............................8

7. "lobed polygon"............................8

8. "between": "an indentation between each lobe"/ "an indentation disposed between each lobe"............................9

10. "outlet"............................9

IV. CONCLUSION............................10

# TABLE OF AUTHORITIES

*AIA Eng'g Ltd. V. Magotteaux Int'l S/A,*
657 F.3d 1267 (Fed. Cir. 2011)........................................................................8

*Arlington Indus. v. Bridgeport Fittings, Inc.,*
632 F.3d 1246 (Fed. Cir. 2011)........................................................................2

*Bell & Howell Document Management v. Altek Sys.,*
132 F.3d 701 (Fed. Cir. 1997)........................................................................4

*Callicrate v. Wadsworth Mfg.,*
427 F.3d 1361 (Fed. Cir. 2005)........................................................................9

*CCS Fitness v. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002)........................................................................2

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579, 590 (1993)........................................................................4

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l,*
222 F.3d 951 (Fed. Cir. 2000)........................................................................3

*Inter-Med, Inc. v. ASI Med., Inc.,*
2011 U.S. Dist. LEXIS 101334 (E.D. Wis. Aug. 31, 2011) (unpublished)........................9

*Markman v. Westview Instru.,*
52 F.3d 967 (Fed. Cir. 1995)........................................................................4

*MBO Labs., Inc. v. Becton, Dickinson & Co.,*
474 F.3d 1323 (Fed. Cir. 2007)........................................................................2

*Nystrom v. Trex Co.,*
424 F.3d 1136 (Fed. Cir. 2005)........................................................................3

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ........................................................1, 4

*Solomon v. Kimberly-Clark Corp.,*
216 F.3d 1372 (Fed. Cir. 2000)........................................................................4

*Solorio v. U.S.,*
228 F.Supp.2d 1280 (D. Utah 2002)........................................................................4

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)..........................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)............................................................................3

Pursuant to the Amended Scheduling Order (Dkt. 33) Defendant, Custom Molded Products, Inc. ("CMP") hereby files its Responsive Claim Construction Brief and respectfully requests that the Court construe the following patent claim terms and phrases as proffered by CMP.

## I.  INTRODUCTION

Plaintiff, Venturi Jet Sets, Inc. ("VJS") proffered claim constructions should be rejected by the Court for many reasons.  For example, VJS's constructions are fatally flawed because VJS fails to define the characteristics and qualifications of a person having ordinary skill in the art, or use the proper time frame for its constructions.  VJS's constructions are also fatally infected by the self-serving declaration of VJS's CEO, who is also a named inventor.  That VJS's constructions are unacceptable is starkly revealed when VJS's proposed constructions are cut and pasted into the claims for each claim term being construed.  Doing so results in redundant nonsensical claims and claim language that will only serve to confuse the jury, rather than help.

The only claim constructions that are consistent with the law and the intrinsic evidence, and which will serve to assist the jury, are the claim constructions set forth in CMP's Motion for Claim Construction, Dkt. 36 ("CMP's Brief").

## II.  RESPONSIVE BACKGROUND AND STATEMENT OF FACTS AND ISSUES

The patent presently at issue is U.S. Patent No. 7,766,038 (the "'038 Patent").  The '038 Patent is generally related to a manifold device that allows multiple pressure jets to be positioned closely together in a pool or spa during the construction of the pool or spa.  *See* JA at 9, '038 Patent, Col. 2, lines 24-38.  Contrary VJS's implication, however, the '038 Patent was not the

only solution to this problem of clustering pressure jets together.[1]  Nor was VJS even the first to

come-up with the concept of a manifold device comprising a "jet cluster."  CMP's Brief, Dkt. 36

at v-vii.

Indeed, during the prosecution of the '038 Patent, the Patent Office rejected most of

VJS's originally filed claims based on several prior art patents.[2]  In order to get its claims

allowed by the Patent Office, VJS was forced to amend its broadest originally filed claims such

that all of the claims are limited to the "lobed polygon" shape of a manifold device.  In fact, VJS

amended its claims such that *every* claim of the '038 Patent is limited to an embodiment with "a

lobed cross sectional shape" or a "cross sectional shape of a lobed polygon," a "lobe," and an

"indentation," where the "indentation" is "closer to a center point of the central chamber" than

the "lobe."  JA at 11-12, '038 Patent Claims 1, 14, and 18.  And, claims 9, 14, and 18 further

require that each lobe must contain an "opening."[3]  JA at 37-44, November 16, 2009

Amendment.

## A.    A Person Having Ordinary Skill In The Art ("PHOSITA")

Claim construction must be done from the perspective of a person having ordinary skill in

the art ("PHOSITA").  *See* VJS's Opening Brief at 1 (Dkt. 35).  In its opening brief, CMP

defined a PHOSITA as having at least: (1) an undergraduate degree in mechanical engineering,

or a related discipline that included coverage of fluid mechanics and general mechanical design;

---

[1] *See* VJS's Opening Cross-Motion for Claim Construction and Memorandum In Support ("VJS's Brief"), Dkt. 35 at v ("The present invention [of the '038 Patent] solves this problem.").

[2] *See* CMP's Brief, Dkt. 36 at viii; *see also* JA at 51-56, July 16, 2009 Patent Office Action.

[3] As set forth in CMP's Brief, because each "lobe" in claims 9, 14, and 18 is required to be large enough to contain an "opening," every "lobe" recited in all of the claims must also be big enough to contain an opening as a matter of law.  *See* CMP's Brief, Dkt. 36 at 2.

and (2) at least two years of industry experience in the use of fluid mechanics in systems. *See* CMP's Brief, Dkt. 36 at x; January 23 2015 Declaration of Dr. Green ("Green Declaration"), Dkt. 36-1 at ¶¶9-12. VJS failed to define the qualifications of a PHOSITA. *See* VJS's Brief, Dkt. 35. VJS's sole affiant, its CEO who is also a named inventor, Mr. Geddes, also failed to define the qualifications of a PHOSITA. *See* Geddes Declaration, Dkt. 35-4. As a result, none of VJS's proffered constructions for the disputed claim terms are made from the mandatory perspective of a PHOSITA.

## B. The Relevant Time Frame For The Construction Of The Disputed Terms

As set forth in VJS's opening brief "[t]he purpose of 'claim construction' is to make an objective assessment about what a person having ordinary skill in the art (hereinafter, a 'PHOSITA'), at the time the patent was filed, would have understood to be the meaning employed by the patentee for the words in the claims." VJS's Brief, Dkt. 35 at 1.

CMP's constructions for the disputed claim terms were made from the perspective of a PHOSITA as of February 21, 2007. *See* CMP's Brief, Dkt. 36 at x; Green Declaration, Dkt. 36-1 at ¶¶8-9.

VJS's constructions, however, are not made as of the relevant time frame, which is on or about February 21, 2007. Instead, VJS's constructions are based on January 2015, about eight years after the proper time frame. *See, e.g.*, VJS's Brief, Dkt. 35 at n.74, n.78, n.81, n.84, n.88, n.92, n.94, n.97, and n.100 (relying on dictionary definitions "accessed January 22, 2015."). VJS's CEO also fails to construe the disputed claim terms as of February 21, 2007 as he merely states that on January 23, 2015 he "understand[s]" the disputed terms "to have the meanings identified below…." *See* Geddes Declaration, Dkt. 35-4 at ¶9.

**C.**     **The Figures Of The '038 Patent Do Not Show Every Claimed Feature**

The '038 Patent states that the specification in conjunction with the Figures "together illustrate, <u>by way of example</u>, features of the inventions." *See* JA at 9, '038 Patent, Col. 1, lines 51-61 (emphasis added). The Figures of the '038 Patent do not illustrate <u>every</u> feature of <u>every</u> claim of the '038 Patent, as incorrectly suggested by VJS. *See* VJS's Brief, Dkt. 35 at vi-vii. For instance, the Figures only show one shape of a manifold, which is a lobed polygon with four lobes. *See* JA at 2-8, '038 Patent, Figures 1-7. Claim 8 of the '038 Patent, by contrast, claims several different manifold shapes that are not shown in the Figures:

> 8. The manifold device of claim 1, wherein the central chamber has a top cross sectional shape selected from the group consisting of <u>a circle</u>, <u>a triangle</u>, <u>a quadrangle</u>, a polygonal, <u>an oval</u>, a cloverleaf, <u>a diamond</u>, a lobed polygon, <u>and combinations thereof</u>.

JA at 11, Claim 8 (emphasis added). None of these claimed alternative embodiments are shown in any Figure of the '038 Patent. *See* JA at 2-8, '038 Patent, FIGS. 1-7. The Figures simply do not show a "circle," a "triangle," a "quadrangle," an "oval," or a "diamond" shaped manifold. *Id*.

Likewise, originally filed claim 8 sought to claim manifolds shaped as a "circle," a "triangle," a "quadrangle," an "oval," and a "diamond." JA at 103, Originally Filed Claim 8. Although none of the Figures of the '038 patent application show any one of these claimed shapes, claim 8 was never rejected by the Patent Office due to the failure of the Figures to show these claimed manifold shapes. JA at 20-91, File History of '038 Patent.

**D.**     **The Parties' Claim Construction Positions And VJS's Cited Evidence**

    **1.**     **"lobe"/"each lobe"**

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| lobe: 14<br><br>each lobe:<br>1, 9, 14, 18 | "a rounded projection that extends away from the center point of the central chamber and that is large enough to contain an opening (as defined herein)" | <u>Construction disclosed to CMP</u>: Reference number 54. The corner of the central chamber.<br><br>Dictionary.com - a roundish projection or division, as of an organ or a leaf.<br><br><u>Construction in Brief</u>:<br>"the corner of the central chamber comprising a roundish projection or division thereof" |

### i.    VJS's Intrinsic Evidentiary Sources

VJS cites to column 3, line 66 through column 4, line 4 of the '038 Patent for its construction. VJS's Brief, Dkt. 35 at 5-6. This portion of the '038 Patent specification states, in relevant part for the term "lobe":

> Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a top cross sectional shape of a lobed polygon with <u>a lobe 54</u> forming each corner of the polygon and an indentation 56 between each lobe 54. <u>Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern.</u> <u>Additionally, each lobe 54 can be sized and shaped to carry one of the plurality of openings 50 in the front jet interface surface 24.</u>

JA at 10, Col. 3, line 66-Col. 4, line 6 (emphasis added).

VJS also relies on Figures 1, 3, 5, and 6 of the '038 Patent "wherein reference number 54 denotes the corners of the central chamber…forming a clover leaf pattern." VJS's Brief, Dkt. 35 at 6. There is no separate reference number for the corner feature within the specification of the '038 Patent. Reference number 54, instead denotes the "lobe" which VJS admits forms "a clover leaf pattern" as stated in the '038 Patent specification. *Id*.

VJS appears to assert that the location of the reference number 54 in the cited Figures supports VJS's construction. *Id*. Reference number 54 is shown in Figures 1, 3, and 5 as

alternately pointing to an edge of the central chamber 20 and to a portion of the back surface 22. JA at 2, '038 Patent Fig. 1. These same Figures 1, 3, and 5 show reference number 20 for the central chamber pointing to an edge of the central chamber 20. *Id.* However, the specification defines the central chamber 20 to be the entirety of the chamber formed by the back surface 22, an opposing jet interface surface 24, and side walls 26 "forming a perimeter around the central chamber 20." JA at 9, '038 Patent, Col. 2, lines 47-59.

One of ordinary skill in the art does not understand that the placement of the reference number 20 in Figures 1, 3, and 5 pointing to an edge of the central chamber to limit the claimed central chamber to just the edge. *See* Green Declaration, Dkt. 36-1 at ¶¶29-30. Similarly, one of ordinary skill in the art does not understand that the placement of reference number 54 in these same figures pointing to an edge to limit the lobe to just an edge of the lobe. *Id.*

### ii.    VJS's Extrinsic Evidentiary Sources

VJS relies on an unspecified January 22, 2015 dictionary definition taken from the website dictionary.com to allegedly support its construction. VJS's Brief, Dkt. 35 at 6 n. 71. VJS also relies on paragraph 9 of the Geddes Declaration (Dkt. 35-4). Mr. Geddes is the first named inventor of the '038 Patent, as well as the president and CEO of Plaintiff, VJS. *Id.* at ¶¶ 2 and 6. The relevant portion of VJS's CEO's Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
>           a. Lobe: the corner of the central chamber comprising a roundish projection or division thereof….

*Id.* at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited in VJS's Brief noted above in section II.D.1.i. Moreover, Mr. Geddes' declaration is entirely conclusory, providing no explanation or reasoning to support his opinions.

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶¶24-31; Exhibit "F," Supplemental Declaration of Dr. Green, filed herewith ("Supplemental Green Declaration") at ¶¶7-9.

### 2. "carries": "each lobe carries an opening in the front jet interface surface"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|--------|--------------------|--------------------|
| 9, 18 | "houses, contains, or includes" | <u>Construction disclosed to CMP</u>: Not defined in the specification.<br><br>Dictionary.com - to contain or be capable of containing.<br><br><u>Construction in Brief</u>:<br>each lobe (as defined) contains or is capable of containing at least a portion of an opening (as defined) |

### i. VJS's Intrinsic Evidentiary Sources

Despite proffering two different constructions for this term, VJS's Brief contends that this term does not need to be construed. VJS's Brief, Dkt. 35 at 9-10. Alternatively, VJS now cites to column 4, lines 4 through 6 and Figure 3 of the '038 Patent for the new construction offered in its Brief that each lobe only has to contain or be "capable" of containing "a portion of an opening." *Id.* The cited portion of the '038 Patent specification states, in relevant part for the term "carries": "[a]dditionally, each lobe 54 can be sized and shaped to carry one of the plurality of openings 50 in the front jet interface surface 24." JA at 10, '038 Patent, Col. 4, lines 4-6.

VJS does not cite any intrinsic evidence for the specific argument that each lobe only has to contain or be "capable" of containing only "a portion of an opening." *See* VJS's Brief, Dkt. 35 at 9-10.

### ii. VJS's Extrinsic Evidentiary Sources

VJS cites the January 22, 2015 website, dictionary.com, apparently relying on an unspecified one of the thirty different definitions for the term "carry" at that website.[4] VJS's Brief, Dkt. 35 at 10 n. 94. VJS also relies on paragraph 9 of its CEO's and inventor's Declaration. The relevant portion of that Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
> > h. "Each lobe carries an opening in the front jet interface surface" / "wherein each lobe carries an opening in the front jet interface surface": each lobe (as defined) contains or is capable of containing at least a portion of an opening (as defined).

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited in VJS's Brief noted above in section II.D.2.i without explanation. *Id*.

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶¶32-36; Exhibit "F," Supplemental Green Declaration at ¶11.

### 3. "disposed in": "each opening disposed in a different lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|--------|--------------------|--------------------|
| 14 | "each lobe (as defined herein) contains one of the plurality of openings (as defined herein)" | Construction disclosed to CMP: the lobe (as construed herein) has no more than a portion of |

---

[4] See http://dictionary.reference.com/browse/carry?s=ts.

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| | | one opening (as construed herein)<br><br>Construction in Brief:<br>each lobe (as defined) has no more than one opening (as defined) or a portion of at least one opening (as defined) |

### i.   VJS's Intrinsic Evidentiary Sources

VJS cites column 4, lines 4 through 6 and Figure 3 of the '038 Patent for the new construction offered for the first time in its brief that each lobe only has "no more than one opening…or a portion of one opening."   VJS's Brief, Dkt. 35 at 10.  Alternatively, VJS contends that this term does not need to be construed.  *Id.*  The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "disposed in": "Additionally, each lobe 54 can be sized and shaped to carry one of the plurality of openings 50 in the front jet interface surface 24.**"**  JA at 10, '038 Patent, Col. 4, lines 4-6.

VJS does not cite any intrinsic evidence for the specific argument that each lobe only has "a portion of one opening."  *See* VJS's Brief, Dkt. 35 at 9-10.

### ii.   VJS's Extrinsic Evidentiary Sources

VJS cites to the January 22, 2015 website, dictionary.com, as extrinsic evidence. VJS's Brief, Dkt 35 at 10 n. 97.  One definition of "disposed" from this website is "to put in a particular or suitable place" with the example "The lamp was disposed on a table nearby."[5]  VJS also relies on paragraph 9 of the Geddes Declaration.  The relevant portion of Mr. Geddes' Declaration reads:

---

[5] *See* http://dictionary.reference.com/browse/disposed?s=t.

Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:

> i. "Each opening disposed in a different lobe": each lobe (as defined) has no more than one opening (as defined) or a portion of one opening (as defined).

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.3.i without explanation. *Id.*

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶¶32-36; Exhibit "F," Supplemental Green Declaration at ¶11.

### 4. "indentation"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 10, 14, 15, 18 | "an inward notch or depression in the back surface, the front jet interface surface, and a side surface that at least partially separates one lobe (as defined herein) from another lobe" | Construction disclosed to CMP: Reference number 56. The edge of the central chamber that is closer to the center point than the lobe. <br><br> Construction in Brief: "the edge of the central chamber that is closer to the center point than the lobe" |

### i. VJS's Intrinsic Evidentiary Sources

VJS cites column 3, line 66 through column 4, line 11, and Figures 1, 3, 5, and 6 of the '038 Patent for its construction. VJS's Brief, Dkt. 35 at 6. The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "indentation":

> Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a top cross sectional shape of a lobed polygon with a lobe 54 forming each corner of the

polygon and <u>an indentation 56 between each lobe 54</u>. Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern….

<u>Each indentation 56 can be sized and shaped to facilitate flow of an aggregate hardening material around the manifold device</u> 10. <u>For example, the indentations 56 can be positioned closer to the center point 58</u> of the central chamber 20 than each lobe 54, <u>and can provide a pathway for unhardened aggregate material to flow around the manifold 10</u>….

JA at 10 (emphasis added).

### ii.     VJS's Extrinsic Evidentiary Sources

VJS relies on the January 22, 2015 definition of "indentation" from the website dictionary.com.  VJS's Brief, Dkt 35 at 6 n. 74.   The January 22, 2015 definitions at this website do not use the term "edge" as argued by VJS's claim construction.  Instead, the definitions at VJS's cited website are "a cut, notch, or deep recess;" "a series or incisions or notches;" "a notching or being notched;" and "indention" – i.e. "an inward notch or depression" as set forth in CMP's construction.[6]

VJS also relies on paragraph 9 of its CEO's and named inventor's Declaration.   The relevant portion of Mr. Geddes' Declaration reads:

Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:

b. Indentation: the edge of the central chamber that is closer to the center point than the lobe.

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited in VJS's Brief noted above in section II.D.4.i without explanation.  *Id.*

---

[6] *See* http://dictionary.reference.com/browse/indentation.

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶¶37-40; Exhibit "F," Supplemental Green Declaration at ¶13.

### 5. "each indentation being positioned closer to a center point of the central chamber than each lobe"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 14, 18 | "the center point of the central chamber must be closer (nearer in space) to each indentation (as defined herein) than it is to each lobe (as defined herein)"<br><br>Alternatively: Indefinite. | <u>Construction disclosed to CMP</u>: the lobe (as construed herein) extends further from the center point than the indentation (as construed herein)<br><br><u>Construction in Brief</u>: the lobe (as defined) extends further from the center point of the central chamber than the indentation (as defined) |

### i. VJS's Intrinsic Evidentiary Sources

VJS cites column 3, line 66 through column 4, line 4, and Figures 1, 3, 5, and 6 of the '038 Patent for its construction. VJS's Brief, Dkt. 35 at 9. The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "indentation" being "closer to":

> Each indentation **56** can be sized and shaped to facilitate flow of an aggregate hardening material around the manifold device **10**. _For example_, the indentations **56** can be positioned closer to the center point **58** of the central chamber **20** than each lobe **54**, and can provide a pathway for unhardened aggregate material to flow around the manifold **10**….

JA at 10 (emphasis added).

VJS does not cite any intrinsic evidence for VJS's position that the determination of whether the <u>indentation</u> is "<u>closer to the center point</u>" as recited in the specification and the claims should be reversed – _i.e._ to a determination of whether the <u>lobe</u> "<u>extends further from the center point</u>." _See_ VJS's Brief, Dkt. 35 at 10. Similarly, VJS does not cite any intrinsic evidence

for the specific argument that only a portion of the lobe has to "extend further from the center point" – *i.e.* that the indentation only has to be closer to the center point than any part of the lobe, rather than the entire lobe. *Id.*

### ii. VJS's Extrinsic Evidentiary Sources

VJS cites to an unspecified definition of the term "closer" from the January 22, 2015 website, dictionary.com. VJS's Brief, Dkt. 35 at 9 n. 91. This website has over sixty definitions for the term "close" with "closer" identified as the comparative of "close." VJS also relies on paragraph 9 of its CEO's and named inventor's Declaration. The relevant portion of Mr. Geddes' Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
> g. "Each indentation being positioned closer to a center point of the central chamber than each lobe": the lobe (as defined) extends further from the center point of the central chamber than the indentation (as defined).

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.5.i without explanation. *Id.*

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶¶41-46; Exhibit "F," Supplemental Green Declaration at ¶¶14-16.

### 6. "corner"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|--------|--------------------|--------------------|
| 14 | "the outermost portion of the lobe (as defined herein) furthest from the center point" | <u>Construction disclosed to CMP</u>: Not defined in the specification. |

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| | | Dictionary.com - the place at which two converging lines or surfaces meet.<br><br>Construction in Brief:<br>"the place at which two converging lines or surfaces meet" |

### i.     VJS's Intrinsic Evidentiary Sources

VJS cites column 4, line 1, and Figures 1, 3, 5, and 6 of the '038 Patent for its construction.  VJS's Brief, Dkt. 35 at 8.  The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "corner":

> Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a top cross sectional shape of a lobed polygon <u>with a lobe 54 forming each corner of the polygon</u> and an indentation 56 between each lobe 54. Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern….

JA at 10, Col. 3, line 66-Col. 4, line 4 (emphasis added).

### ii.     VJS's Extrinsic Evidentiary Sources

VJS cites the January 22, 2015 website dictionary.com, apparently relying on one of twenty-seven definitions of the term "corner" at this website.  VJS's Brief, Dkt. 35 at 8 n. 84.  Among the definitions for "corner" at this dictionary.com webpage is "region; part; quarter" which is consistent with the use of "corner" in the '038 Patent specification – "the central chamber 20 can have a top cross sectional shape of a lobed polygon with a lobe 54 forming each corner of the polygon…."[7]  JA at 10, Col. 3, line 66-Col. 4, line 4.

VJS also again relies on paragraph 9 of its CEO's and named inventor's Declaration.  The relevant portion of Mr. Geddes' Declaration reads:

---

[7] *See* http://dictionary.reference.com/browse/corner?s=t.

Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:

> e. Corner: the place at which two converging lines or surfaces meet

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.6.i without explanation. *Id.*

Dr. Green disagrees with Mr. Geddes' construction. Exhibit "F," Supplemental Green Declaration at ¶¶9-10.

### 7. "lobed polygon"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 8, 14 | "a multi-sided shape that comprises at least one lobe (as defined herein)" | A lobe forming each corner of the polygon and an indentation between each lobe. |

### i. VJS's Intrinsic Evidentiary Sources

The claim element at issue is "a central chamber having a jet interface surface an [sic] a cross sectional shape of a *lobed polygon* with a lobe forming each corner of the polygon…." JA at 11, Claim 14 (emphasis added). Substituting VJS's proposed construction into this claim element of claim 14 redundantly results in:

> a central chamber having a jet interface surface an [sic] a cross sectional shape of ***a lobe forming each corner*** *of the polygon and an indentation between each lobe* with **a lobe forming each corner** of the polygon….

*Id.*, Claim 14 (emphasis added)

VJS cites column 3, line 66 through column 4, line 4, and Figures 1, 3, 5, and 6 of the '038 Patent for its construction. VJS's Brief, Dkt. 35 at 7. The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "corner":

> Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a top cross sectional shape of a lobed polygon with a lobe 54 forming each corner of the polygon and an indentation 56 between each lobe 54. Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern….

JA at 10, Col. 3, line 66-Col. 4, line 4 (emphasis added).

### ii.    VJS's Extrinsic Evidentiary Sources

VJS cites the January 22, 2015 website dictionary.com for the separate terms "lobe" (*see* section C.1, *supra*) and "polygon" as there is no definition at this website for the claim phrase "lobed polygon." *See* VJS's Brief, Dkt. 35 at 7 n. 78. The definition of "polygon" at VJS's cited website is "a figure…having three or more, usually straight, sides" – i.e. "a multi-sided shape" as set forth in CMP's construction.[8]

VJS also again relies on paragraph 9 of its CEO's and named inventor's Declaration. The relevant portion of Mr. Geddes' Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
>      c.  Lobed polygon: a lobe forming each corner of the polygon and an indentation between each lobe

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.7.i without explanation. *Id.*

---

[8] *See* http://dictionary.reference.com/browse/polygon?s=t.

Dr. Green disagrees with Mr. Geddes' construction. Green Declaration, Dkt. 36-1 at ¶47; Exhibit "F," Supplemental Green Declaration at ¶¶17-18.

**8.      "between": "an indentation between each lobe"/"an indentation disposed between each lobe"**

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| "an indentation between each lobe": 1, 18<br><br>"an indentation disposed between each lobe": 14 | "at a point intermediate of two other points" | <u>Construction disclosed to CMP</u>: Not defined in the specification.<br><br>Dictionary.com - in the space separating.<br><br><u>Construction in Brief</u>: "an indentation (as defined) in the space separating each lobe (as defined)" |

**i.      VJS's Intrinsic Evidentiary Sources**

VJS cites column 3, line 66 through column 4, line 4, and Figures 1, 3, 5, and 6 of the '038 Patent for its construction. VJS's Brief, Dkt. 35 at 8. The portion of the '038 Patent specification cited by VJS states, in relevant part for the term "between":

> Thus, as best seen in FIGS. 1, 3, and 5, the central chamber 20 can have a top cross sectional shape of a lobed polygon <u>with a lobe 54 forming each corner of the polygon and an indentation 56 between each lobe</u> 54. Each lobe 54 can extend away from a center point 58 of the central chamber 20 in a clover leaf pattern….

JA at 10, Col. 3, line 66-Col. 4, line 4 (emphasis added).

**ii.      VJS's Extrinsic Evidentiary Sources**

VJS cites to the January 22, 2015 website dictionary.com, apparently relying on one of eighteen definitions of the term "between" at this website. VJS's Brief, Dkt. 35 at 9 n. 88. Other

definitions for "between" at this same website[9] include "intermediate to," consistent with CMP's construction.

VJS also relies on paragraph 9 of the Geddes Declaration. The relevant portion of Mr. Geddes' Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
> f. "An indentation between each lobe" / "an indentation disposed between each lobe": an indentation (as defined) in the space separating each lobe (as defined)

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.8.i without explanation. *Id.*

### 9. "opening"/"plurality of openings"

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| "Plurality of openings": 1, 2, 11, 14, 17, 18 "Opening" 9, 14, 18 | "holes(s) in the jet interface surface" | "hole(s) in the jet interface surface" |

The Parties agree that plurality of opening(s) is identified in the specification by reference number 50 and is defined to mean: "hole(s) in the jet interface surface." VJS's Brief, Dkt. 35 at 7; CMP's Brief, Dkt. 36 at 9.

### 10. "outlet"

---

[9] *See* http://dictionary.reference.com/browse/between?s=t.

| Claims | CMP'S CONSTRUCTION | VJS'S CONSTRUCTION |
|---|---|---|
| 1, 4, 5, 14, 18 | "a hole in one of the side walls that lets water flow out of the central chamber in a direction that is perpendicular to the water flow direction out of the plurality of openings (as defined herein)" | <u>Construction disclosed to CMP</u>: Reference number 50. Hole(s) in the jet interface surface.<br><br><u>Construction in Brief</u>:<br>"outlet": "an opening or passage by which fluid is let out of the central chamber"<br><br>"outlet**s**": "hole(s) in the jet interface surface" |

      **i.**      **VJS's Intrinsic Evidentiary Sources**

      **a.**      **"Outlet" – singular**

VJS argues that "the term 'outlet' in the singular" means "an opening or passage by which fluid is let out of the central chamber." VJS's Brief, Dkt. 35 at 10. VJS cites the Summary of the Invention of the '038 Patent specification as the intrinsic evidence for this definition, as well as Figures 1-7. *Id*. at n. 99. The term "outlet" is defined in the Detailed Description of the '038 Patent specification to be "outlet 40." JA at 9, '038 Patent, Col. 2, lines 43-46. This "outlet 40" is shown in all of the figures cited by VJS as being disposed in a side wall of the central chamber 20. *Id*. at 2-8, Figures 1-7. The '038 Patent specification also defines the "outlet 40" as "disposed in" one of the side walls different from the side wall containing the inlet 30. *Id*. at 10, Col. 3, lines 11-19. The '038 Patent specification describes the outlet 40 has having a direction of flow that "is substantially perpendicular" to the flow through the plurality of openings 50. *Id*. at 10, Col. 3, lines 44-51.

      **b.**      **"Outlets" – plural**

VJS argues that the term "outlet" when used in the plural, "outlets," means something very different from the same term used in the singular. VJS's Brief, Dkt. 35 at 7. VJS argues

that the term "'outlets, in the plural" is a "synonym" for the term "openings." *Id.* As discussed

above, VJS defines openings to be the reference number 50, or "holes in the jet interface

surface." The '038 Patent specification is clear that the openings 50 have a fluid flow

perpendicular to the fluid flow is perpendicular to the fluid flow through the inlet 30 and outlet

40. JA at 9, Col. 3, lines 44-51.

The argument section of VJS's Brief cites no intrinsic evidence for its argument that the

term "outlet" used in the singular means an opening with fluid flow in one direction, while the

term "outlets" used in the plural means openings in an entirely different surface with a fluid flow

perpendicular to the fluid flow of the term "outlet" in the singular. VJS's Brief, Dkt. 35 at 7

(arguing about "openings" and "outlet**s**") and 10 (arguing a different meaning for "outlet" in the

singular).

Instead, the Background section of VJS's Brief makes the conclusory statement: "Not to

be confused with the outlet 40, the '038 Patent also frequently describes the openings 50 as

"**outlets,**" in the plural. *Id.* at viii. The '038 Patent specification uses the term "outlets" in the

plural exactly twice. JA at 10, Col. 4, lines 35-36 and 11, Col. 5, lines 4-5.. It is clear from the

context that the use of "outlets" in each case was a mistake, as evidence by other similar misuses

of terms in the surrounding paragraphs of the '038 Patent specification. *E.g.*, *Id.* at 10, Col. 4,

lines 35-36 (using the term "pressure jets 50" when the "openings" are defined as reference

number 50) and Col. 4, lines 46-56 (using the term "pressure jets 60" when the "nozzle" is

defined as reference number 60).

### ii.    VJS's Extrinsic Evidentiary Sources

For the term "outlets" in the plural, VJS does not cite to any extrinsic evidence. VJS's

Brief, Dkt. 35 at 7.  For the term "outlet" in the singular, VJS cites to the website dictionary.com and paragraph 9 of its CEO's and named inventor's Declaration.  The relevant portion of Mr. Geddes' Declaration reads:

> Based on my experience and my inventorship, I understand the following terms and/or phrases, as used within one or more claims of the '038 Patent, to have the meanings identified below to a person having ordinary skill in the art, of which I am one:
>
> j. "Outlet": an opening or passage by which fluid is let out of the central chamber

Geddes Declaration, Dkt. 35-4 at ¶9.

Mr. Geddes' declaration relies entirely on the same portions of the '038 Patent specification cited by VJS's Brief noted above in section II.D.10.i without explanation.  *Id*.  Mr. Geddes' declaration does not cite, or mention, the portions of his own patent specification where the term "outlets" is defined and described in relation to the figures.  *Compare*    Geddes Declaration, Dkt. 35-4, at ¶9 n. 11 *with* JA at 9, '038 Patent, Col. 2, lines 43-46 and at 10, Col. 3, lines 11-19 and Col. 3, lines 44-51.

## III. VJS'S CONSTRUCTIONS SHOULD NOT BE ADOPTED BY THE COURT

The claim constructions proffered by VJS in its opening claim construction brief (Dkt. 35) suffer from four fatal legal flaws.

### A. VJS's Failure To Define PHOSITA Is Fatal To All Of VJS's Constructions

Despite noting the "bedrock" role that a person having ordinary skill in the art ("PHOSITA") plays in claim construction, VJS *never* defines the characteristics of a PHOSITA.[10] *See* VJS's Brief, Dkt. 35 at 1; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("The ordinary and customary meaning of a claim term is the meaning that the term would have to a [PHOSITA] . . . as of the effective filing date of the patent application.") (citations omitted). Indeed, VJS's brief is silent with respect to the qualifications of a PHOSITA (Dkt. 35); and although VJS's CEO, Mr. Geddes, purports to proffer testimony as to the meaning of all the claim terms "to a person having ordinary skill in the art," he too fatally fails to define those qualifications (Dkt. 35-4 at 3, ¶9). As a result, none of VJS's constructions should be adopted by the Court.[11]

### B. VJS's Constructions Based On The Figures Are Erroneous

The second fatal flaw is that VJS's proffered constructions are based directly or indirectly on the Figures of the '038 Patent and attempt to read the features of the Figures into the claims. *See* VJS's Brief, Dkt. 35. at 4. Contrary to VJS's argument(s), however, every feature of the

---

[10] CMP's definition of a PHOSITA is set forth at page "x" of its opening brief (Dkt. 36).

[11] Moreover, VJS also fails to proffer a single construction for a disputed claim term at the relevant time period, which is February 21, 2007, when the provisional patent application was filed. *See* VJS's Brief, Dkt. 35 and Geddes Declaration, Dkt. 35-4 at ¶9. *Phillips*, 415 F.3d at 1312-13 ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention.") (citations omitted).

claims of the '038 Patent does not need to be shown in the Figures of the '038 Patent. *See, e.g.*, *Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("[D]rawings in a patent need not illustrate the full scope of the invention"); *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("[P]atent coverage is not necessarily limited to inventions that look like the ones in the figures."); *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) ("[T]he specifications did not need to include a drawing of a multi-component, curved member for the claimed invention to cover that particular embodiment.").

For instance, the Figures only show one shape of a manifold, which is a lobed polygon with four lobes. *See* JA at 2-8, '038 Patent, FIGS. 1-7. Claim 8 of the '038 Patent, by contrast, claims several different manifold shapes that are not shown in the Figures:

> 8. The manifold device of claim 1, wherein the central chamber has a top cross sectional shape selected from the group consisting of <u>a circle</u>, <u>a triangle</u>, <u>a quadrangle</u>, a polygonal, <u>an oval</u>, a cloverleaf, <u>a diamond</u>, a lobed polygon, <u>and combinations thereof</u>.

JA at 11, Claim 8 (emphasis added). None of these claimed alternative embodiments are shown in any Figure of the '038 Patent. *See* JA at 2-8, '038 Patent, Figures 1-7. The Figures simply do not show a "circle," a "triangle," a "quadrangle," an "oval," or a "diamond" shaped manifold. *Id.*

Likewise, originally filed claim 8 sought to claim manifolds shaped as a "circle," a "triangle," a "quadrangle," an "oval," and a "diamond." JA at 103, Originally Filed Claim 8. Although none of the figures of the '038 patent application show any one of these claimed shapes, claim 8 was never rejected by the Patent Office due to the failure of the Figures to show these claimed manifold shapes. JA at 20-91, File History of '038 Patent.

Moreover, the Figures of the '038 Patent contain no statement, dimensioning, or anything else to indicate that these drawings are to scale. JA at 2-8, '038 Patent Figures 1-7. Where figures are not to scale – as is the case with respect to the Figures of the '038 Patent – Courts may <u>not</u> rely on the figures as evidence of spatial relationships.[12] As a result, the Court should not rely on VJS's proffered construction for at least the following claim terms where VJS relies on the Figures for spatial relationships: (i) "lobe" where VJS relies on the placement of reference number 54 in the Figures as showing the alleged location of the "lobe" (VJS's Brief, Dkt. 35 at 5-6); (ii) "indentation" where VJS relies on the Figures for its definition of indentation as "closer to the center point than the lobe" (*Id.* at 6); and (iii) "each indentation being position closer to a center point of the central chamber than each lobe" where VJS also relies on the Figures as showing the "closer to" feature (*Id.* at 9).

## C.    VJS's Extrinsic Evidence Is Inadmissible And/Or Unreliable

The third and fourth fatal flaws relate to VJS's extrinsic evidence in the form of a self-serving "inventor" declaration from the CEO of VJS and various dictionary definitions. Of course, extrinsic evidence may only be used when, *after* having examined the intrinsic evidence, an ambiguity still exists. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). But, even if an ambiguity exists, extrinsic evidence, including inventor testimony, may not be used to re-write claim terms. *Id.* Indeed, where inventor testimony is directed "to how the patent

---

[12] Since the '038 Patent does not disclose that the drawings are to scale and is silent as to dimensions, arguments based on measurement of the drawing features are of little value. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l,* 222 F.3d 951, 956 (Fed. Cir. 2000) (The disclosure gave no indication that the drawings were drawn to scale. "[I]t is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue."); *Nystrom v. Trex Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) ("[A]rguments based on drawings not explicitly made to scale in issued patents are unavailing.")

should be construed based on the text of the patent" – like the Geddes Declaration offered by VJS – such testimony is "no more than legal opinion" that should be disregarded entirely.[13] As a result, the Court should not rely on Mr. Geddes' Declaration as support for any of VJS's proffered constructions as it is entitled to little, if any, weight.[14]

Similarly, the Court should not rely on VJS's extrinsic evidence in the form of dictionary definitions for any claim term because all of VJS's dictionary definitions are taken from the January 2015 timeframe, rather than the correct timeframe, which is February 2007.  *See Phillips*, 415 F.3d at 1312-13 ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention.").

Due to the ten (10) page limitation, CMP respectfully incorporates by reference the above stated fatal flaws into its responsive argument(s) for each claim term set forth below.  As a result, the following discussion focuses primarily on the shortcomings of the intrinsic evidence relied upon by VJS for each disputed claim term.

### D. The Intrinsic Evidence Does Not Support VJS's Constructions

---

[13] *Markman v. Westview Instru.*, 52 F.3d 967, 983 (Fed. Cir. 1995); *see also Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration.  The testimony of an inventor is often a self-serving, after-the-fact attempt to state what should have been part of his or her patent application….") (quoting *Bell & Howell Document Management v. Altek Sys.*, 132 F.3d 701,706 (Fed. Cir. 1997)).

[14] *See Markman*, 52 F.3d at 983 ([T]he testimony of [inventor] and his patent attorney on the proper construction of the claims is entitled to no deference.").  This is especially true where, as in the case of the Geddes Declaration, the opinions are unsupported conclusory assertions. *Phillips*, 415 F.3d at 1318 ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court").  A Court "must exclude" such testimony "that is no more than 'subjective belief or unsupported speculation'" of a purported expert. *Solorio v. U.S.* 228 F.Supp.2d 1280, 1284 (D. Utah 2002) (quoting  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)).  For at least these reasons, CMP submits that Mr. Geddes' Declaration should be excluded entirely.

### 1. "lobe"/"each lobe"

VJS's construction for the term "lobe" focuses almost entirely on portions of the specification defining the term "lobed polygon," not the term "lobe." *Id*. 5-6. The portions of the specification defining "lobe" – ignored by VJS – state that each "lobe" extends "away from the center point 58 of the central chamber 20 in a clover leaf pattern" and also that "each lobe 54 can be sized and shaped to carry one of the plurality of openings 50…." JA at 10, '038 Patent, Col. 4, lines 2-6; *see also* Green Declaration, Dkt. 36-1, at ¶¶25-27; Exhibit "F," Green Supplemental Declaration at ¶¶7-9.

VJS's construction is wrong because a "corner" as defined by VJS cannot "be sized and shaped to carry one of the plurality of openings 50," as the claims and the specification of the '038 Patent both require. JA at 10, '038 Patent, Col. 4, lines 2-6; Exhibit "F," Green Supplemental Declaration at ¶¶8-10. VJS's construction is also wrong because it leads to nonsensical results. Claim 14 recites "a central chamber having…cross sectional shape of a lobed polygon with a *lobe* forming each corner of the polygon." *Id*. at 11, Claim 14 (emphasis added). Inserting VJS's proposed construction for "lobe" results in claim 14 reciting "a central chamber having…cross sectional shape of a lobed polygon with a ***corner of the central chamber comprising a roundish projection or division thereof*** forming each **corner** of the polygon."

### 2. "carries": "each lobe carries an opening in the front jet interface surface"

VJS offers a new construction for "carries" to mean "contains or is capable of containing at least a portion of an opening." *See* Section II.D.2, *supra*; VJS's Brief, Dkt. 35 at 10. Nothing in the intrinsic evidence supports VJS's construction that the term "carries" may be construed as allowing "each lobe" to: be "capable of carrying" an opening, or containing less than the entirety

of an opening.  *See* Green Declaration, Dkt 36-1 at ¶¶32-36; Exhibit "F," Green Supplemental

Declaration at ¶11.

### 3.    "disposed in": "each opening disposed in a different lobe"

VJS's construction is wrong because the intrinsic record does not support or suggest that

only "a portion of" an opening must be in each lobe, instead of the entirety of an opening. *See*

Green Declaration, Dkt 36-1 at ¶¶32-36; Exhibit "F," Green Supplemental Declaration at ¶11.

### 4.    "indentation"

VJS's argument about the term indentation focuses on the statement in the specification

that "the indentations 56 can be positioned closer to the center point 58 of the central chamber 20

than each lobe 54." VJS's Brief, Dkt. 35 at 6.  This portion of the '038 Patent is discussing the

"closer to" limitation, but is not defining the term "indentation."  Instead, "indentation" is

defined to be more than just an edge as argued by VJS.  The '038 Patent specification states that

each indentation 56 is "sized and shaped to facilitate the flow of an aggregate hardening material

around the manifold device" in order to enclose the manifold in the aggregate material and

secure it in place for the spa or pool.  JA at 10, '038 Patent, Col. 4, lines 2-15; Green

Declaration, Dkt. 36-1 at ¶37.

VJS's proposed construction is also improper because it is redundant.  When cut and

pasted into claim 1, VJS's construction redundantly and nonsensically reads:

> "wherein the central chamber has a lobed cross sectional shape with an
> [indentation] *the central chamber [] is **closer to** the center point than the lobe
> between each lobe*, [each indentation] *the central chamber [] is **closer to** the
> center point than the lobe between each lobe* being positioned **closer to** a center
> point of the central chamber than each lobe;".

*See* JA at 11, Claim 1.

### 5. "each indentation being positioned closer to a center point of the central chamber than each lobe"

#### a. VJS's Lack Of Evidence

VJS first argues that the term "closer" as used in the claims is well within the common vocabulary of lay persons. VJS's Brief, Dkt. 35 at 9. VJS then offers a construction that distorts the meaning of this claim phrase beyond what a lay person, or a person of ordinary skill in the art, would understand this term to mean. *Id*. VJS offers no explanation for this construction. Instead, VJS offers conclusory statements and cites a) portions of the specification that do not support VJS's construction; and b) the entirely conclusory declaration of Mr. Geddes, a named inventor and CEO of VJS. *Id*.; *see also* Section II.D.5, *supra*. Nothing offered by VJS explains why its definition is proper or should be adopted.

VJS's inability to offer any explanation for VJS's definition of this potentially case dispositive claim phrase is telling. As set forth in CMP's Brief, the intrinsic and extrinsic evidence requires that this phrase be construed to mean that the entire "indentation" is closer to the center point of the central chamber than is any point of the "lobe." CMP's Brief, Dkt. 36 at 5-6. Stated another way, this phrase requires that the entire indentation is closer to the center point than the entirety of the "lobe." *Id*.; *see also*, Green Declaration, Dkt. 36-1 at ¶¶42-44. Nothing in the specification states, discusses, or suggests anything less than the entire indentation or lobe, or only a portion of an indentation or lobe – in any context, including in the context of determining which is closer to the center point. *See id*.; Exhibit "F," Green Supplemental Declaration at ¶¶14-15. VJS has offered nothing to rebut CMP's proposed construction.

#### b. VJS's "Further From" Construction Is Also Indefinite

VJS's proposed "further from" construction does not solve the indefiniteness of this

7

"closer to" claim phrase. Instead, VJS's proffered "further from" construction presents a similar conundrum, namely, what part or how much of an indentation needs to be "further from" the center point than is a lobe. Indeed, nothing in the intrinsic record allows a PHOSITA to determine what part or how much of an indentation needs to be "further from" the center point than is each lobe. VJS's attempt to shift the analysis from "closer to" to "further from" does not add clarity or find support in the intrinsic record. Nothing in the specification provides any guidance to one of ordinary skill in the art as to how to determine which part of (and/or how much of) the indention needs to be either "closer to" or "further from" which part of (and/or how much of) the lobe. CMP's Brief, Dkt. 36 at 6-7; *see also* Green Declaration, Dkt. 36-1at ¶45; Exhibit "F," Green Supplemental Declaration at ¶16. VJS's Brief offers no such guidance either.

### 6. "corner"

VJS's proposed definition of "corner" is inconsistent with the use of "corner" in the '038 Patent specification. JA at 10, Col. 3, line 66-Col. 4, line 4; *see also* Exhibit "F," Green Supplemental Declaration at ¶¶9-10. VJS's definition of "corner" also leads to nonsensical results when it is combined with VJS's other claim constructions, such as "lobe." *See Id*. Such a construction that leads to nonsensical claim elements is contrary to the purpose of claim construction, which is helping the jury understand the claimed invention. *See AIA Eng'g Ltd. V. Magotteaux Int'l S/A*, 657 F.3d 1267, 1276 (Fed. Cir. 2011) ("We strive, where possible, to avoid nonsensical results in construing claim language.").

### 7. "lobed polygon"

VJS's construction of "lobed polygon" is wrong because it does not define the term at all, as it merely and improperly repeats other language already existing in claim 14. JA at 11, '038

Patent, Claim 14. *See Inter-Med, Inc. v. ASI Med., Inc.*, 2011 U.S. Dist. LEXIS 101334, at *13

(E.D. Wis. Aug. 31, 2011) (unpublished) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d

1554, 1566-68 (Fed. Cir. 1997)); *see also* Exhibit "F," Green Supplemental Declaration at ¶¶17-

18.

### 8. "between": "an indentation between each lobe"/"an indentation disposed between each lobe"

As set forth in CMP's Brief, VJS's definition of "between" as "in the space separating" is

too inclusive as it includes <u>all</u> of the space separating the lobes. *See* CMP's Brief, Dkt. 36 at 9.

### 10. "outlet"

VJS offers no authority for its novel proposition – set forth for the first time in its Brief –

that the term outlet, when used in the singular, should be construed one way, but this same term

when used in the plural, "outlets" should be construed to have a very different meaning. VJS's

Brief, Dkt. 35 at 7 and 10. Nor can a claim term like "outlet" be construed as VJS argues to have

different meanings within the claims of the '038 Patent. Such differing constructions of "outlet"

and "outlets" are contrary to both the intrinsic evidence (s*ee* Section II.D.10, *supra*) and the rules

of claim construction. *See, e.g.*, *Callicrate v. Wadsworth*, 427 F.3d 1361, 1371 (Fed Cir. 2005)

("Of course, this court interprets claim terms consistently throughout various claims of the same

patent").

Instead, one of ordinary skill in the art would understand the term "outlet" in the '038

Patent claims, whether used in the singular or plural, to mean "a hole in one of the side walls that

lets water flow out of the central chamber in a direction that is perpendicular to the water flow

direction out of the plurality of openings." *See* Section II.D.10, *supra*; *see also* CMP's Brief,

Dkt. 36 at 9-10.

VJS's construction for "outlet" in the singular is incomplete because VJS looks to the "Summary of the Invention" portion of the '038 Patent specification for its definition. *Id.* at 10, n. 99; JA at 9, '038 Patent, Col. 1, lines 51-53. This two-paragraph Summary of the Invention mentions the term "outlet." *Id.* However, VJS's construction ignores the "Detailed Description" section of the specification defining the term "outlet," assigning the term "outlet" to reference number 40, and describing how the "outlet 40" is implemented as shown in an embodiment illustrated by the '038 Patent figures. *See* Section II.D.10, *supra*; *see also* JA at 9, '038 Patent, Col. 2, lines 39-46 and at 10, Col. 4, lines 11-19 and lines 36-51.

CMP's construction is consistent with these portions of the '038 Patent specification that define the term outlet. *See* CMP's Brief, Dkt. 36 at 9-10. Therefore, one of ordinary skill in the art would understand that the term "outlet" (whether singular or plural) is not the same as the separate claim term "opening." *Id.*; *see also* Section II.D.10, *supra*. Rather, one of ordinary skill in the art would understand that the meaning of the term "outlet" consistent with the '038 Patent specification is "a hole in one of the side walls that lets water flow out of the central chamber in a direction that is perpendicular to the water flow direction out of the plurality of openings."

IV.     **CONCLUSION**

For the above stated reasons, and for the additional reasons set forth in CMP's Motion For Claim Construction And Request For Hearing (Dkt. 36), CMP respectfully requests the Court to adopt CMP's proposed constructions.

Respectfully submitted this 23rd day of February, 2015.

By: */s/ Stephen R Risley* _____

THOMAS R. VUKSINICK (Utah State Bar No. A3341)
Email: tvuksinick@wnlaw.com
WORKMAN │ NYDEGGER A Professional Corporation
60 East South Temple, Tenth Floor
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

STEPHEN R. RISLEY (*Admitted Pro Hac Vice*)
Email:srisley@srtslaw.com
SMITH RISLEY TEMPEL SANTOS LLC
Two Ravinia Drive
Suite 700
Atlanta, GA 30346
Telephone: (770) 709-0022

Attorneys for Defendant Custom Molded Products, Inc.


## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on February 23, 2015 with the clerk of the court for the U.S. District Court, District of Utah, Central Division and thereby served on all counsel who have consented to electronic service, including the following counsel:

Dax D. Anderson (danderson@kmclaw.com)
James T. Burton (jburton@kmclaw.com)
Joshua S. Rupp (jrupp@kmclaw.com)
KIRTON McCONKIE
60 East South Temple, Suite 180
Salt Lake City, Utah 84111

*/s/ Stephen R. Risley* _____
Stephen R. Risley