Dax D. Anderson (UBN 10168)
James T. Burton (UBN 11875)
Joshua S. Rupp (UBN 12647)
**KIRTON McCONKIE**
60 East South Temple, Suite 1800
Salt Lake City, Utah 84111
Phone: (801) 328-3600
Fax: (801) 321-4893
Email: danderson@kmclaw.com
Email: jburton@kmclaw.com
Email: jrupp@kmclaw.com

*Attorneys for Plaintiff*
*Venturi Jet Sets, Inc.*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| VENTURI JET SETS, INC., a Utah Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOM MOLDED PRODUCTS, INC., a Georgia corporation, and JOHN DOES 1-10,<br><br>Defendants. | **PLAINTIFF VENTURI JET SETS, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Case No.: 2:13-cv-01031-TS-EJF<br><br>Hon. Judge Ted Stewart<br><br>Hon. Magistrate Judge Evelyn J. Furse |

Pursuant to the Federal and Local Rules of Civil Procedure, the Court's "Amended Scheduling Order,"[1] and Plaintiff Venturi Jet Sets, Inc.'s ("Plaintiff" or "Venturi") Motion to Extend Claim Construction Deadlines,[2] Plaintiff, by and through undersigned counsel,

---

[1] See Docket Entry ("D.E.") #22 (Scheduling Order and Order Vacating Hearing) at ¶ 4(d) (deadline for parties to file simultaneous responsive claim construction briefs); D.E. # 33 (Amended Order Granting in Part and Denying in Part Motion to Amend Scheduling Order) at 1 (amendment to deadline for responsive claim construction briefs).

[2] See D.E. #45 ("Motion to Extend"). Through the Motion to Extend, which remains pending currently, Venturi sought an extension of the deadline for both parties to file their responsive claim construction briefs until two (2) weeks after the rough Venturi 30(b)(6) deposition transcript was available to both parties (see id.). Both parties received the rough Venturi 30(b)(6) deposition transcript on Friday, February 27, 2015 (see email correspondence between S. Risely and J. Rupp dated March 2-3, 2015, attached hereto as **Exhibit "A"**). Accordingly, per

respectfully submits this Responsive Claim Construction Brief (the "Response") in response to Defendant Custom Molded Products, Inc.'s ("Defendant" or "CMP") Motion for Claim Construction and Request for Hearing[3] ("CMP's Motion" or the "Motion").

## INTRODUCTION

Claim construction aims to resolve disputes as to what the technical terms of patent claim mean from the perspective of a person having ordinary skill in the art (hereinafter, a "PHOSITA"). The entire point of this exercise is to ultimately assist the trier of fact. Simply put, claim construction is intended to ensure that the jury understands the disputed technical claim terms so as to enable the jury to meaningfully determine infringement and resolve validity disputes. Turning this objective on its head, CMP's Motion largely seeks to obfuscate exceptionally simple, non-technical claim terms. Worse, CMP often does so contrary to the express language of the claims, the specification, and figures of the patent-in-suit (U.S. Patent No. 7,766,038 ("the '038 Patent")[4]) or CMP seeks to import limitations foreign to the claim language in order to artificially narrow the scope of the claims. Either approach is contrary to law.

For example, CMP seeks to supplant the simple, non-technical claim term "carries" with three alternatives apparently more to CMP's liking—"houses, contains, or includes." These proposed substitute terms, however, are not in the '038 Patent, let alone the claims thereof. CMP cannot simply select substitutions which suit its infringement position; the claim language is sufficiently clear on its face and should be submitted to the jury to resolve infringement as-is. Where the claim language is of a more technical nature (such as "lobe"), construction is necessary, but such terms must be construed in accordance with well-established legal standards. Limitations from the specification cannot be read into the claims. And, constructions which exclude preferred embodiments disclosed in the specification must be rejected absent compelling

---

the relief sought in the Motion to Extend, and respectfully assuming the same is granted, the deadline for the parties' responsive claim construction briefs is Friday, March 13, 2015.
[3] See D.E. #36 (CMP's Motion).
[4] Pin citations to the '038 Patent are hereinafter in the form '038, XX:YY, where XX refers to the column numbers of the '038 Patent and YY refers to the lines numbers thereof.

evidence to the contrary. For these reasons, Venturi respectfully requests that the Court adopt Venturi's proposed claim constructions, as summarized in **Exhibit "B"** hereto.

## BRIEF RESPONSE TO DEFENDANT'S "BACKGROUND AND STATEMENT OF FACTS AND ISSUES"

CMP's Motion sets forth a fairly lengthy "Background and Statement of Facts and Issues" section (the "Facts Section").[5] Specifically, CMP's Facts Section sets forth a vague and meandering discussion of (a) the provisional patent application to which the '038 Patent claims priority, (b) U.S. Patent No. 6,804,841 (the "Williams Patent"), (c) a prior lawsuit filed on the basis of the Williams Patent, (d) the prosecution history of the '038 Patent, (e) an unexplained and vague line-drawing editing Figure 3 of the '038 Patent, (f) CMP's definition of PHOSITA (which is unnecessary as Venturi relies on a named inventor, who is indisputably a PHOSITA), (g) Venturi's infringement contentions (which have no bearing on claim construction), and (h) an improper presentation of CMP's argument, setting forth CMP's proposed claim constructions and the alleged intrinsic and extrinsic evidence in support thereof.[6]

Notwithstanding the excessive length of CMP's Facts Section, and the volume of information referenced therein, it is unclear how *any* of CMP's Facts Section (save for the argumentative portions thereof) even impact claim construction. For example, while CMP discusses the provisional application to which the '038 Patent claims priority, CMP never advances a single argument as to how the substantive differences (if any) between the underlying provisional application and the '038 Patent impact the parties' proposed constructions, if at all. Likewise, despite discussing the prosecution history of the '038 Patent, CMP never advances a single argument as to how the prosecution history impacts the parties' proposed constructions, if at all. In short, CMP's Facts Section principally comprises nothing more than hand-waiving and red herrings, all of which should simply be ignored by the Court.

---

[5] See id. at v-xvii
[6] See D.E. #36 (CMP's Motion) at v-xvii.

# ARGUMENT

## I. CLARIFICATION OF PERTINENT LEGAL STANDARDS

Notwithstanding general agreement,[7] some legal standards require clarification. First, the point of claim construction is to assist the trier of fact in understanding claim terms from the perspective of a PHOSITA.[8] While inventors qualify as PHOSITAs,[9] for some claim terms,

> attempting to "construe" the claim language adds little in the way of clarity. Where the perspective of a [PHOSITA] would add nothing to the analysis, there may be no need to construe the terms. Thus, non-technical terms … and terms of degree … may not require construction by the court. Where "construing" a claim term would involve simply substituting a synonym for the claim term, it may be appropriate to allow the claim language to speak for itself.[10]

Simply put, "[t]here is no point in giving jurors stuff they won't understand."[11] Where "the ordinary meaning of claim language … is readily apparent," claim construction "involves little more than the application of widely accepted meaning of commonly understood words."[12]

Second, "[i]t is a 'bedrock principle' of patent law that **the claims** of a patent define the invention…."[13] "[O]ne may not read a limitation into a claim from the written description."[14] Cases so holding are legion.[15] Broad claim language may not be limited to embodiments—even

---

[7] See, e.g., D.E. #36 (CMP's Motion) at 1.

[8] See, e.g., Peter S. Menell et al., *Patent Claim Construction: A Modern Synthesis and Structured Framework*, 25 BERKELEY TECH. L.J. 711, 731 (2010), Available at: http://scholarship.law.berkeley.edu/facpubs/564; see also Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) (seeking "the ordinary and customary meaning" of claim terms).

[9] See, e.g., Phillips, 415 F.3d at 1313-14 (inventors are typically PHOSITAs and inventor testimony can inform construction).

[10] E.g., Menell et al., supra n. 8, at 731-732 ("straightforward … language" can "stand as-is.").

[11] Apple Inc. v. Motorola, Inc., No. 1:11-cv-08540, 2012 WL 8123793, at *1 (N.D. Ill. March 12, 2012) (unpublished) (Cir. J. Richard A. Posner) ("I want the constructions themselves to be in ordinary English intelligible to persons having no scientific or technical background").

[12] Acumed LLC v. Stryker Corp., 483 F.3d 800, 805 (Fed. Cir. 2007) (internal quotation marks omitted) ("The task of comprehending th[e] words [of a claim] is not always a difficult one.").

[13] E.g., Phillips, 415 F.3d at 1312 (internal quotation marks omitted) (emphasis added).

[14] E.g., RF Del., Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1264 (Fed. Cir. 2003).

[15] E.g., Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996) ("The written description part of the specification itself does not delimit the right to exclude"); see also, e.g., McCarty v. Lehigh Valley R.R. Co., 160 U.S. 110,

preferred embodiments—disclosed in the patent.[16] This is true even if the patent only describes a single embodiment.[17] On the other hand, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."[18] Such a construction "would require highly persuasive evidentiary support."[19]

Third, "[e]ach claim of a patent … shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."[20] Moreover, "[c]lear and convincing evidence is required to invalidate a patent."[21] And, close questions are "resolved in favor of the patentee."[22]

Finally, patent infringement is a two-step analysis: first, the court construes the claim language; and, second, the jury compares the properly construed claims to the accused device.[23] Claim construction does not concern the accused product, which is for the jury to evaluate.

## II. WHERE CONSTRUCTION IS NECESSARY, VENTURI'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED (UNLESS OTHERWISE NOTED)

With the foregoing principles in mind, the disputed claim terms are addressed below in the order presented in CMP's Motion.

---

116 (1894) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim . . ., we should never know where to stop").

[16] See, e.g., Nazomi Commc'ns, Inc. v. ARM Holdings, PLC, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); Tex. Instruments, Inc. v. United States Int'l Trade Comm'n, 805 F.2d 1558, 1563 (Fed. Cir. 1986) (same).

[17] Phillips, 415 F.3d at 1323.

[18] MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1333 (Fed. Cir. 2007) (internal quotation marks omitted)).

[19] Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1377 (Fed. Cir. 2005) (internal quotation marks and alterations omitted) (collecting cases).

[20] 35 U.S.C. § 282.

[21] Aero Prods. Int'l., Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1015 (Fed. Cir. 2006).

[22] E.g., Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004).

[23] E.g., Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 905-906 (Fed. Cir. 2005).

### A. "Lobe" / "Each Lobe": "A Rounded Projection the Perimeter of Which Extends Away From the Center Point of the Central Chamber"

| CMP's Construction | Venturi's Construction |
|---|---|
| "a rounded projection that extends away from the center point of the central chamber and that is large enough to contain an opening (as defined herein)" | "the corner of the central chamber comprising a roundish projection thereof" |

"Lobe" should be construed uniformly without reference to "each."[24] Regardless, Venturi's construction is substantively identical to the first clause of CMP's construction. Thus, Venturi hereby proposed "Lobe" should be construed as "a rounded projection the perimeter of which extends away from the center point of the central chamber."

As to the second clause of CMP's proposed construction—"and that is large enough to contain an opening"—CMP's proposal reads limitations into the term "lobe" that are inappropriate and confusing and will thus be unhelpful to the jury.[25] The parties agree that "openings" are "hole(s) in the jet interface surface."[26] Accordingly, the relative size of the openings relates to the size of the jet interface surface, not the lobes. Moreover, while some claims state that "each lobe carries an opening in the front jet interface surface,"[27] this again says nothing of the relative size of either the lobe, the front jet interface surface, or the openings themselves—which can be any size suitable for practicing the invention, not merely the illustrative dimensions depicted in some of the patent figures. In short, the size relationship between the front jet interface surface and the openings is relative, or one of degree. It is error to impose a more exact construction on terms of degree; such language should be left to the jury.[28]

---

[24] See D.E. #34 (Joint Appx.) at 11-12 (claims 1, 9, 14, and 18).
[25] E.g., Menell et al., supra n.8, at 731; Apple, No. 1:11-cv-08540, 2012 WL 8123793, at *1.
[26] See D.E. #36 (CMP's Motion) at 9 (emphasis added) ("CMP agrees with VJS that 'openings' are 'holes' in the jet interface surface.").
[27] E.g., D.E. #34 (Joint Appx.) at 11 (claim 9) (emphasis added).
[28] See Acumed, 483 F.3d at 805 ("a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems … is properly left to the trier of fact."); Playtex Prods., 400 F.3d at 907 (rejecting construction which imposes numerical tolerances on claim term); Modine Mfg. Co. v. USITC, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("It is usually incorrect to read numerical precision into a claim from which it is absent").

"A patentee need not define his invention with mathematical precision…."[29] All that is necessary is that the patent sufficiently apprise readers skilled in the art of the definite feature of the invention with reasonable certainty.[30] The second clause of CMP's proposed claim construction should be rejected.

The Court should also reject the second clause of CMP's proposed construction because it violates principles of claim differentiation.[31] CMP's second clause, in effect, improperly imports the only limitation of dependant claim 9—"each lobe carries an opening in the front jet interface surface"—into independent claim 1.[32] This is improper under the doctrine of claim differentiation.[33] Moreover, CMP's use of the word "contains" is also inappropriate for reasons discussed in greater detail below (see Section II(B), infra).

**B. "Each Lobe Carries an Opening in the Front Jet Interface Surface" / "Openings Disposed in the Jet Interface Surface with Each Opening Disposed In a Different Lobe": "Each Lobe Contains or is Capable of Containing No More than One Opening or a Portion of One Opening"**

| CMP's Constructions | Venturi's Constructions |
|---|---|
| "Carries": "houses, contains, or includes" | "Carries": "each lobe (as define) contains or is capable of containing at least a portion of an opening (as defined)" |
| "Disposed In": "each lobe (as defined herein) contains one of the plurality of openings (as defined herein)" | "Disposed In": "each lobe (as define) has no more than one opening (as defined) or a portion of at least one opening (as defined)" |

While the parties have treated the "carries" and "disposed in" phrases as separate terms, it is clear that both parties effectively treat these terms as synonymous.[34] The core dispute is

---

[29] Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370 (Fed. Cir. 2014) (citation and internal quotation marks omitted).
[30] Nautilus, Inc. v. Biosig Instruments, Inc., 134 S.Ct. 2120, 2128-2130 (2014).
[31] E.g., Phillips, 415 F.3d at 1315 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim").
[32] Compare D.E. #34 (Joint Appx.) at 11, claim 1, with id. at claim 9.
[33] Karlin Tech, Inc. v. Surgical Dynamics, Inc., 177 F.3d 968 (Fed. Cir. 1999) (claim differentiation precludes the reading of a limitation from a dependent claim into a parent independent claim.)
[34] See D.E. #36 (CMP's Motion) at 3-4; see also D.E. 36-1 at 11-12 (CMP's expert treating

4

whether "carries" / "disposed in" means, in effect, "entirely contains" or merely "capable of containing at least a portion." Based on the specification the latter is appropriate construction.

"Carries" and "disposed in" are both non-technical, lay terms accessible to the jury as-is. Accordingly, these terms require no construction. Indeed, CMP's proposal seeks to substitute three alleged synonyms—"houses, contains, or includes"—for the simple word "carries." Even if such words were synonymous with "carries" (which they are not), CMP's proposal is not helpful to the jury—the claim language should speak for itself.[35]

The '038 Patent does not provide a specialized definition for "carries" or "disposed in."[36] The dictionary[37] defines "carry" as "to contain or be capable of containing."[38] This definition also comprises the understanding of a PHOSITA and inventor.[39] CMP's wholesale reliance on nothing more than the unsupported, *ipse dixit* opinions of its hired expert cannot supplant broad claim language merely to suit CMP's litigation strategy.[40] Moreover, CMP's proposed construction improperly seeks to limit the broad claim language to *some* embodiments encompassed in the '038 Patent specification and figures, premised on the relative and variable size of the openings in the figures. This, however, is improper—limitations from the written description cannot be read into the claim language to artificially narrow scope.[41]

In sum, the phrases "each lobe carries an opening in the front jet interface surface" and "openings disposed in the jet interface surface with each opening disposed in a different lobe" should be construed to collectively mean "each lobe contains or is capable of containing no more than one opening or a portion of one opening." This also resolves CMP's footnote 5.

---

"carries" and "disposed in" together).
[35] E.g., Menell et al., supra n.8, at 731; Apple, No. 1:11-cv-08540, 2012 WL 8123793, at *1.
[36] See D.E. 36-1 at 11-12 (CMP's expert discussing "carries" and "disposed in").
[37] E.g., Phillips, 415 F.3d at 1318 (dictionaries are "among the many tools that can assist the court in determining the meaning of particular terminology").
[38] See http://dictionary.reference.com/browse/carry?s=t, last accessed March 11, 2015.
[39] See D.E. #35-4 (Decl. of Brent Geddes in Support of Venturi's Claim Constructions) at 3-4.
[40] E.g., Phillips, 415 F.3d at 1312; RF Del., 326 F.3d 1264.
[41] See, e.g., id.; see also, e.g., Markman, 52 F.3d at 980 McCarty, 160 U.S. at 116.

C.  **"Indentation"**: **"An Inward Notch or Depression in the Central Chamber that at Least Partially Separates One Lobe from Another Lobe"**

| CMP's Construction | Venturi's Construction |
|---|---|
| "an inward notch or depression in the back surface, the front jet interface surface, and a side surface that at least partially separates one lobe (as defined herein) from another lobe" | "the edge of the central chamber that is closer to the center point than the lobe" |

"Indentation" is a non-technical, lay term accessible to the jury as-is. It can and should be submitted to the jury without construction. Indeed, CMP's proposal seeks to substitute the simple word "indentation" with two less accessible, alleged synonyms—"inward notch" and "depression." Such substitutions are likely unhelpful to the jury. In any event, if "indentation" is construed, Venturi has no dispute with CMP's proposal save for its length, which delineates the constituent elements of the central chamber. Thus, Venturi proposes a compromise; "indentation" should be construed as "an inward notch or depression in the central chamber that at least partially separates one lobe from another lobe."

D.  **"Each Indentation Being Positioned Closer to a Center Point of the Central Chamber than Each Lobe"**: **"The Lobe Extends Further From the Center Point of the Central Chamber than the Indentation"**

| CMP's Construction | Venturi's Construction |
|---|---|
| "the center point of the central chamber must be closer (nearer in space) to each indentation (as defined herein) than it is to each lobe (as defined herein)" | "the lobe (as defined) extends further from the center point of the central chamber than the indentation (as defined)" |

The crux of this term is "closer." "Closer" is a non-technical, lay term accessible to the jury as-is. Accordingly, "closer" can and should be submitted to the jury without construction. Indeed, it appears CMP would construe "closer" as "nearer in space"—the common and ordinary meaning—which Venturi has no dispute with. In any event, if "closer" is construed, the parties' competing constructions are essentially two sides of the same coin. Simply put, if the lobes extend further away from the center point of the central chamber than the indentations, then the center point of the central chamber is closer, or nearer in space, to the indentations than it is to the lobes. Nevertheless, the '038 Patent expressly teaches that the lobes "<u>extend away from the</u>

center point 58 of the central chamber 20 in a clover leaf pattern" while the indentations "can be positioned closer to the center point 58...."[42] Thus, Venturi's proposed construction derives from the express teachings of the '038 Patent—that each lobe <u>extends further from the center point</u> of the central chamber than the indentations. This is also the understanding of a PHOSTIA and named inventor.[43]

Rather than address the obvious—that the parties' competing constructions are essentially the same—CMP's Motion feigns dispute principally to set forth allegedly "case-dispositive" contentions.[44] Telling, however, CMP's arguments do not correlate with its own proposed construction. Specifically, CMP contends that the term "closer" "requires the <u>entire</u> 'indentation' to be closer to the center point of the central chamber than is <u>any point</u> of the 'lobe.'"[45] Even if this were true, CMP's "entirety" argument is not reflected in its own proposed construction. This is because CMP's construction is supported neither by the plain meaning of "closer" nor the specification of the '038 Patent—it is simply self-serving to advance CMP's non-infringement contentions. More importantly, however, CMP's "entirety" argument must be rejected where, if adopted, it would either (1) improperly read limitations into the claim which do not exist or (2) improperly exclude preferred embodiments from the scope of the claim.[46] On the one hand, CMP contrives its "entirety" position (albeit conclusory) by extrapolation (as opposed to express teachings) from the specification in an attempt to narrow the meaning of the broad claim language.[47] This is improper. On the other hand, CMP seeks to leverage its "entirety" argument to suggest that, "if any portion or point of the 'lobe' is closer to the center point of the central chamber than is any portion or point of the 'indentation,' this claim phrase is

---

[42] See D.E. #34 (Joint Appx.) at 10 ('038, 4:2-4 and 4:9-11) (emphasis added).
[43] See D.E. #35-4 (Decl. of Brent Geddes in Support of Venturi's Claim Constructions) at 3-4.
[44] See D.E. #36 (CMP's Motion) at 5-7.
[45] Id. At 5 (emphasis added).
[46] E.g., RF Del., 326 F.3d at 1264; MBO Labs., 474 F.3d at 1333 (Fed. Cir. 2007).
[47] See D.E. #36 (CMP's Motion) at 5-6 ("the '038 Patent always refer[s] to … the indentations and lobes as a whole and in their entirety…." (emphasis omitted)).

not met."[48] If this were true, and in concert with CMP's arbitrary line-drawing edits of Figure 3 of the '038 Patent,[49] CMP's position, taken to its logical conclusion, would exclude preferred embodiments of the invention. This is also improper.[50] CMP's arguments should be rejected as *non sequitor* violations of claim construction canons.

In the alternative, CMP seeks to advance additional non-infringement and/or invalidity contentions.[51] These arguments should also be rejected—claim construction is not premised on a comparison to the accused product; it is the jury's job to *subsequently* compare the construed claims to the accused device.[52] Moreover, CMP fails to meet the heavy burden to provide clear and convincing evidence of indefiniteness sufficient to overcome the presumption of validity.[53] Regardless, akin to the discussion above (see Section II(A), supra), the term "closer" is relative, or one of degree. Where a patentee need not define his invention with mathematical precision and terms of degree need not have exact constructions imposed thereon, the line-drawing (if any) associated with "closer" should be left to the jury.[54] In other words, "[t]he definiteness standard must allow for a modicum of uncertainty."[55] All that is necessary is that the patent sufficiently apprise readers skilled in the art of the definite feature of the invention with reasonable certainty,[56] which the '038 Patent does according to a PHOSITA and inventor.[57]

---

[48] See id.
[49] See id. at ix (editing Figure 3 of the '038 Patent).
[50] MBO Labs., 474 F.3d at 1333; Chimie, 402 F.3d at 1377.
[51] See id. at 6-7 ("VJS has [allegedly] been unable to show what was meant by this claim phrase or how CMP's [accused] products allegedly meet this claim phrase.").
[52] E.g., Playtex Prods., 400 F.3d at 905-906.
[53] 35 U.S.C. § 282; Aero Prods., 466 F.3d at 1015; Bancorp, 359 F.3d at 1371.
[54] See Interval Licensing, 766 F.3d at 1370; Acumed, 483 F.3d at 805 ("a sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems … is properly left to the trier of fact."); Playtex Prods., 400 F.3d at 907 (rejecting construction which imposes numerical tolerances on claim term); Modine, 75 F.3d at 155 ("It is usually incorrect to read numerical precision into a claim from which it is absent").
[55] See Interval Licensing, 766 F.3d at 1370 (internal quotation marks omitted).
[56] Nautilus, 134 S.Ct. at 2128-2130.
[57] See D.E. #35-4 (Decl. of Brent Geddes in Support of Venturi's Claim Constructions) at 3-4.

### E.   "Corner": "The Place at Which Two Converging Lines or Surfaces Meet"

| CMP's Construction | Venturi's Construction |
|---|---|
| "the outermost portion of the lobe (as defined herein) furthest from the center point of the central chamber" | ""the place at which two converging lines or surfaces meet" |

"Corner" is a non-technical, lay term accessible to the jury as-is; it can and should be submitted to the jury without construction.  If "corner" is construed, Venturi's construction should be adopted where it is the common meaning of "corner,"[58] it is consistent with the '038 Patent and figures, and it comprises the understanding of a PHOSITA and named inventor.[59] CMP's construction must be rejected—as CMP explicitly recognizes, the '038 Patent teaches that "a lobe 54 form[s] each corner of the polygon;"[60] thus, "corner" cannot be restricted to merely the outermost portion of the lobe where the lobe forms the corner.

### F.   "Lobed Polygon": "A Multi-Sided Shape that Comprises at Least One Lobe"

| CMP's Constructions | Venturi's Constructions |
|---|---|
| "a multi-sided shape that comprises at least one lobe (as defined herein)" | "a lobe (as defined) forming each corner of the polygon and an indentation (as defined) between each lobe" |

Venturi's proposed construction is drawn directly from the '038 Patent: "a lobed polygon" is a cross sectional shape having "a lobe 54 forming each corner of the polygon and an indentation between each lobe 54."[61]  Nevertheless, Venturi has no particular dispute with CMP's proposed construction and hereby adopts the same.  "Lobed polygon" should be construed as "a multi-sided shape that comprises at least one lobe."

---

[58] See http://dictionary.reference.com/browse/corner?s=t, last accessed March 11, 2015.
[59] See D.E. #35-4 (Decl. of Brent Geddes in Support of Venturi's Claim Constructions) at 3-4.
[60] See D.E. #34 (Joint Appx.) at 10 ('038, 4:1) (emphasis added); D.E. #36 (CMP's Motion) at 8.
[61] See D.E. #34 (Joint Appx.) at 10 ('038, 3:67-4:2).

### G. "Between" : "In the Space Separating"

| CMP's Constructions | Venturi's Constructions |
|---|---|
| "at a point intermediate of two other points" | "in the space separating" |

"Between" is a non-technical, lay term accessible to the jury as-is. Accordingly, "between" can and should be submitted to the jury without construction. Indeed, CMP's proposal seeks to substitute the simple word "between" with jargon less accessible (and therefore unhelpful) to the jury. If construed, "between" should simply be replaced by "in the space separating." "Between" may be satisfied even if the defined space extends beyond specific boundaries and Venturi's proposal should be adopted.[62]

### H. "Opening(s)" / "Outlets": "Hole(s) in the Jet Interface Surface"

The parties agree that "opening(s)," in the singular and the plural, should be construed as "hole(s) in the jet interface surface." Outlets, in the plural, should be given the same construction as that is how it is used, where "outlets," in the plural, clearly refers to the same structure as "opening(s)" in the '038 Patent and the claims thereof.[63]

### I. "Outlet": "A Hole in One of the Side Walls that Lets Water Flow Out of the Central Chamber in a Direction that is Perpendicular to the Water Flow Direction Out of the Plurality of Openings"

| CMP's Constructions | Venturi's Constructions |
|---|---|
| "a hole in one of the side walls that lets water flow out of the central chamber in a direction that is perpendicular to the water flow direction out of the plurality of openings (as defined herein)" | "an opening or passage by which fluid is let out of the central chamber" |

"Outlet" is a non-technical, lay term accessible to the jury as-is. "Outlet" can and should be submitted to the jury without construction. Nevertheless, Venturi has no particular dispute with CMP's proposed construction and hereby adopts the same for "outlet" in the singular. "Outlet" should be construed as CMP proposes.

---

[62] See Foster v. Hallco Mfg. Co, Inc., 1997 U.S. App. LEXIS 18989 (Fed. Cir. 1997) (unpublished).
[63] See D.E. #34 (Joint Appx.) at 10 ('038, 4:35-37), 11 ('038, 5:8-12, 6:5-9).

## CONCLUSION

For all of the forgoing reasons, Venturi's claim construction proposals, as summarized in Exhibit B hereto, should be adopted.

DATED this 13th day of March, 2015.   Respectfully Submitted,

**KIRTON McCONKIE**

By: /s/ Dax D. Anderson
    Dax D. Anderson
    James T. Burton
    Joshua S. Rupp

    *Attorneys for Plaintiff*
    *Venturi Jet Sets, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 13th day of March, 2015, a copy of the foregoing was filed electronically through the Court's CM/ECF system, which causes service upon all counsel registered thereon.

                                                    /s/Margaret L. Carlson