IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VENTURI JET SETS, INC., a Utah Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOM MOLDED PRODUCTS, INC., a Georgia Corporation, and JOHN DOES 1-10,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON CLAIM CONSTRUCTION AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:13-CV-1031 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on the parties' Cross-Motions for Claim Construction and on Defendant's Motion for Partial Summary Judgment. A hearing on all Motions was held on August 3, 2015. Having considered the arguments of the parties and the materials provided, the Court will construe the requested terms and deny Defendant's Motion for Partial Summary Judgment as discussed below.

I.   BACKGROUND

On November 11, 2013, Plaintiff Venturi Jet Sets, Inc. ("VJS") filed suit against Defendant Custom Molded Products, Inc. ("CMP") for patent infringement of United States Patent No. 7,766,038 (the "'038 Patent") and false patent marking of United States Patent No. 6,804,841 (the "'841 Patent"). CMP filed a counterclaim seeking a declaratory judgment of patent invalidity, non-infringement, and false marking of the '038 Patent. The parties filed Cross-Motions for Claim Construction. Additionally, CMP filed a Motion for Partial Summary Judgment claiming invalidity for indefiniteness of the '038 Patent.

1

## II.   DISCUSSION

### A. CLAIM CONSTRUCTION

The parties request construction of the following terms and phrases: lobe; carries; disposed in; indentation; each indentation being positioned closer to a center point of the central chamber than each lobe; corner; lobed polygon; between; plurality of openings; opening; outlet; and outlets.

The Supreme Court, in *Markman v. Westview Instruments, Inc.*,[1] held that claim construction is a matter exclusively within the province of the court.[2] Claim terms are generally given their ordinary and accustomed meaning as understood by one of ordinary skill in the art.[3] In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful.[4]

A patentee may choose, however, "to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."[5] "Thus, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with

---

[1] 517 U.S. 370 (1996).

[2] *Id.* at 372.

[3] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[4] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

[5] *Vitronics Corp.*, 90 F.3d at 1582.

their ordinary meaning."[6]  "The court may also consider the prosecution history of the patent, if in evidence."[7]

1.  LOBE

The parties request construction of the term "lobe" as it appears in claims 1, 9, 14, and 18 of the '038 Patent.[8]  Claim 1 teaches that the "central chamber has a lobed cross sectional shape with an indentation between each lobe . . . ."[9]  Claims 9, 14, and 18 teach that "each lobe carries an opening;"[10] and "a plurality of openings [is] disposed in the jet interface surface with each opening disposed in a different lobe of the central chamber . . . ."[11]

CMP argues that the term lobe in all claims, including claims 1, 9, 14, and 18, must have the same meaning.  That meaning, CMP urges, should be: "a rounded projection that extends away from the center point of the central chamber and that is large enough to contain an opening (as defined herein)."[12]  The crux of CMP's argument is that if "lobe" in claim 1 is not required to be large enough to carry an opening, claim 9 would be rendered nonsensical.  Dependent claim 9 requires that "each lobe [of the manifold device of claim 1,] carries an opening."[13]  CMP argues that if claim 9 relies on the manifold device of independent claim 1, then the lobe in claim 1 must be large enough to carry the opening referred to in claim 9.

---

[6] *Id.*

[7] *Id.*

[8] '038 Patent col. 5, l. 67; col. 6, l. 37; col. 6, l. 59; col. 8, l. 3.

[9] *Id*. col. 5, l. 66–67.

[10] *Id*. col. 6, l. 37–38; col. 8, l. 16.

[11] *Id*. col. 6, l. 66–67.

[12] Docket No. 59-1, at 1.

[13] '038 Patent col. 6, l. 37–38.

CMP is only partially correct. There can be multiple embodiments of the claimed invention. While an embodiment of the invention under claims 9, 14, and 18 must have lobes large enough to carry an opening, an embodiment of the invention based on claim 1 alone does not require lobes large enough to carry an opening because such language is absent in the claim.

Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."[14] This doctrine is based on the "common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope."[15] Here, the limitation of dependent claim 9—that each lobe carries an opening—cannot be read into independent claim 1. Claim 1 makes no mention that each lobe carries an opening, nor does it specify that an opening be disposed in each lobe. In the same way, independent claims 14 and 18 reference the disposition of the openings with each lobe, but independent claim 1 makes no mention of the relationship. This implies that the term "lobe" need not always carry an opening—if it did, the patentee would not have to clarify in other claims that each lobe carries an opening or that an opening is disposed within each lobe.[16] Thus, "lobe" cannot be construed to require that it be large enough to contain an opening because an opening is not required to be disposed in each lobe.

Accordingly, the Court will adopt VJS's construction for the term "lobe" as: "a rounded projection, the perimeter of which extends away from the center point of the central chamber."

---

[14] *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

[15] *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999).

[16] *See Acumed*, 483 F.3d at 807.

2. CARRIES/DISPOSED IN

CMP requests construction of the term "carries" as it appears in claims 9 and 18 and the term "disposed in" as it appears in claim 14 of the '038 Patent.[17] The terms appear in the language: "each lobe carries an opening in the front jet interface surface"[18] and "each opening disposed in a different lobe."[19] The use and construction of the terms "carry" and "disposed in" are similar in meaning and will be analyzed together.

CMP proposes "carries" to be defined as "houses, contains, or includes."[20] Similarly, CMP proposes "disposed in" to be defined as "each lobe (as defined herein) contains one of the plurality of openings (as defined herein)."[21]

VJS objects to construction. It asserts that the two terms are non-technical and should be submitted to the jury as-is. However, if construction is required, VJS proposes that the term "carry" be defined according to its dictionary definition: "to contain or be capable of containing."[22] Were the meaning of the phrases, "each lobe carries an opening in the front jet interface surface" and "each opening disposed in a different lobe," to be construed, VJS submits that the phrases collectively mean "each lobe contains or is capable of containing no more than one opening or a portion of one opening."[23]

---

[17] '038 Patent col. 6, l. 37–38; col. 8, l. 16; col. 6, l. 66–67.

[18] *Id.* col. 6, l. 37–38; col. 8, l. 16.

[19] *Id.* col. 6, l. 66–67.

[20] Docket No. 59-1, at 1.

[21] *Id.*

[22] Docket No. 50, at 5 (citing http://dictionary.reference.com/browse/carry?s=t, last accessed March 11, 2015).

[23] Docket No. 50, at 5.

CMP disputes a construction that allows each lobe to contain or be capable of containing a portion of an opening. It argues that nothing in the language of the '038 Patent claims or specification supports VJS's argument that each lobe may contain less than an entire opening.

"To begin with, the context in which a term is used in the asserted claim can be highly instructive."[24] "Differences among claims can also be a useful guide in understanding the meaning of particular claims."[25] As set forth above, the differentiation between claims 1, 9, 14, and 18 indicate that claim 1 must be read broadly without the requirement that each lobe carry an opening. Accordingly, the limitation of claim 9 must be read to require that the term "carry" mean "contain," rather than affording the possibility—"capable of containing." To hold otherwise would render the difference between these claims meaningless.

Moreover, if the patentee were to intend that the word "carry" mean "capable of carrying," the patent could have easily been written to include the option into the claim, e.g. with the word "can" preceding "carry" as it was written within the specification. The '038 Patent specification teaches that "each lobe *can* be sized and shaped to carry one of the plurality of openings in the front jet interface surface."[26] Accordingly, claims 1, 9, 14, and 18 afford for the variation of embodiments. Though "a dictionary definition has the value of being an unbiased source," the Court need not rely on the definition if it contradicts a reading of the claims from the patent documents.[27]

---

[24] *Phillips v. AWH Corp.*, 415 F.3d at 1314.

[25] *Id.*

[26] '038 Patent col. 4, l. 4–6 (emphasis added).

[27] *Phillips*, 415 F.3d at 1323.

Further, the '038 Patent specification, claims, and drawings all suggest that each lobe is an undefined area extending away from the central chamber. The exact dimensions of each lobe are not defined and VJS is not required to do so.[28] Instead, the '038 Patent specification teaches that the lobes may be shaped and sized differently.[29] Therefore, it is not possible to determine if an entire opening or only a portion of an opening is disposed within each lobe, as the size and area of each lobe is not defined. However, the language does limit the disposition of one opening to one lobe using the words "each lobe" and "each opening." Thus, the term "carry," and "disposed in" as used in claims 9, 14, and 18, limits the claim and teaches that each lobe contains no more than one opening or a portion of one opening.

Accordingly, the Court will construe the terms "carry" and "disposed in" as: "to contain no more than one opening or a portion of one opening."

3. INDENTATION

At the *Markman* hearing, the parties agreed that the term "indentation" be constructed as: "an inward notch or depression in the central chamber that at least partially separates one lobe (as defined) from another lobe."[30] The Court will adopt the agreed upon construction.

4. EACH INDENTATION BEING POSITIONED CLOSER TO A CENTER POINT OF THE CENTRAL CHAMBER THAN EACH LOBE

CMP requests construction of the phrase "each indentation being positioned closer to a center point of the central chamber than each lobe" as it appears in claims 1, 14, and 18.[31] CMP

---

[28] *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("A patentee need not define his invention with mathematical precision . . . .").

[29] '038 Patent col. 4, l. 1.

[30] *Id.* (emphasis added).

[31] '038 Patent col. 5, l. 67–col. 6, l. 2; col. 6, l. 57–59; col. 8, l. 1–3.

chiefly argues that the phrase is indefinite and submits a Motion for Partial Summary Judgment, which will be addressed in a separate section below. Alternatively, however, CMP proposes the construction: "the center point of the central chamber must be closer (nearer in space) to each indentation (as defined herein) than it is to each lobe (as defined herein)."[32] VJS again objects to construction, but proposes: "the lobe (as defined) extends further from the center point of the central chamber than the indentation (as defined)."[33] The claim language itself and parties' competing constructions encompass identical understandings—that each indentation is closer to the center point of the central chamber than each lobe. Even if the Court were to adopt CMP's proposal, this would not satisfy CMP's dispute with this claim phrase.

      CMP's dispute with this claim phrase focuses on whether the claim language requires that each indentation be measurably closer in proximity to the center point of the central chamber than any point of the lobe. However, as set forth above, the patent specification and claims do not define the metes and bounds that form the lobe. Instead, the '038 Patent specification teaches that the lobes may vary in size and that each lobe "form[s] each corner of the polygon [manifold]."[34] Accordingly, the Court has constructed the term lobe as a rounded projection, the perimeter of which extends away from the center point of the central chamber. In light of this reading, the disputed claim phrase is more clearly understood as referencing the term lobe as an entirety. Therefore, when the claim phrase indicates that each indentation is positioned closer to the center point of the central chamber than each lobe, one skilled in the art can reasonably

---

[32] Docket No. 59-1, at 2.

[33] *Id.*

[34] '038 Patent col. 4, l. 1.

understand it as each indentation is positioned closer to the center point of the central chamber than each lobe, in its entirety.

Thus, the Court will construct the disputed phrase as: "each indentation is positioned closer to the center point of the central chamber than each lobe as an entirety." CMP's argument of indefiniteness will be more fully addressed below.

5.  CORNER

The Court will decline construction of the term "corner." The Court finds this term needs no further construction.

6.  LOBED POLYGON

The parties have agreed that the term "lobed polygon" be constructed as "a multi-sided shape that comprises at least one lobe (as defined herein)."[35] The Court will adopt the agreed upon construction.

7.  BETWEEN

The Court will decline construction of the term "between." The Court finds this term needs no further construction.

8.  OPENING/PLURALITY OF OPENINGS

The parties have agreed the terms "opening(s)" and "plurality of openings" be construed as "hole(s) in the jet interface surface."[36] The Court will adopt the agreed upon construction.

---

[35] Docket No. 59-1, at 2.

[36] *Id.*

9.  OUTLET

Parties have agreed the term "outlet" be construed as "a hole in one of the side walls that lets water flow out of the central chamber in a direction that is perpendicular to the water flow direction out of the plurality of openings (as defined herein)."[37]  The Court will adopt the agreed upon construction.

10. OUTLETS

The parties disagree over construction of the term "outlets" in the plural.  VJS notes in its Cross-Motion for Claim Construction that "outlets" should not be confused with "outlet 40, in the singular [because] the '038 Patent . . . frequently describes the openings 50 as 'outlets' in the plural."[38]  Accordingly, VJS argues that "outlets" be constructed as "openings," which are: "hole(s) in the jet interface surface."

At the *Markman* hearing, CMP argued that the Court should not rewrite or correct a mistake and cited to *Allen Engineering Corp. v. Bartell Industries, Inc.*[39]  In *Allen*, the Federal Circuit held that it is not the function of the court to "rewrite claims to preserve their validity."[40]  The court is "simply tasked with determining whether the claims 'particularly point [] out and distinctly claim []' what the inventor regards as his invention."[41]  *Allen* involved a patent for a concrete riding trowel, which is a machine used to smooth the surface of freshly poured concrete. In that case, the defendants argued that certain claims of the patent were invalid for

---

[37] *Id.* at 3.

[38] Docket No. 35, at viii.

[39] 299 F.3d 1336 (Fed. Cir. 2002).

[40] *Id.* at 1349.

[41] *Id*.

indefiniteness under 35 U.S.C. § 112.  The language of claims 1–4 and 13 of the patent limited "one of the two pivot steering boxes to pivoting 'its gear box *only* in a plane *perpendicular* to said biaxial plane,' [while] the specification describes this structure in contrary terms, stating that 'gearbox 85A *cannot* pivot in a plane *perpendicular to* the biaxial plane.'"[42]  Though it was "apparent from a simple comparison of the claims with the specification that the inventor did not regard a trowel in which the second gear box pivoted only in a plane perpendicular to the biaxial plane to be his invention," the court ruled that the mistake rendered claims 1–4 and 13 of the patent invalid under § 112.[43]

However, the issue of whether the mistaken use of the term "outlets" instead of "openings" in claim 1 renders the claim invalid is not before the Court.  Rather, the Court has been asked to construct the term outlets under general claim construction principles.  At the hearing, VJS pointed to two instances in the '038 Patent in which the term "outlets" is used, both situations indicating that the term outlets refer to the plurality of openings in the jet interface surface.  Thus, the Court will construct the term outlets as it does the term openings, which are: "hole(s) in the jet interface surface."

### B.  DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In its Motion for Partial Summary Judgment for patent invalidity based on indefiniteness, CMP bears the burden of showing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[44]  In patent cases, the issue of indefiniteness is a question of law and "disagreement over the meaning of a term within a claim does not

---

[42] *Id*.

[43] *Id*.

[44] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

necessarily create a genuine issue of material fact."[45] Rather, "a claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'"[46] In assessing indefiniteness, "general principles of claim construction apply."[47] In that regard, consideration will be based primarily on "intrinsic evidence, *viz.*, the claim language, the specification, and the prosecution history."[48] As a starting point, patents are presumed valid and the movant must overcome this presumption by clear and convincing evidence.[49]

In its Motion, CMP argues that the claim phrase "each indentation being positioned closer to a center point of the central chamber than each lobe,"[50] is indefinite. CMP contends that because that claim phrase is present within every claim of the '038 Patent, the '038 Patent is invalid for indefiniteness.

The parties agree that the term "closer to" is a "word of degree."[51] As such, the Court must determine whether the patent provides "some standard for measuring that degree."[52] However, "the definiteness requirement must take into account the inherent limitations of

---

[45] *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).

[46] *Biosig Instruments, Inc. v. Nautilus, Inc.,* 783 F.3d 1374, 1377 (Fed. Cir. 2015) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc. (Nautilus II)*, 134 S.Ct. 2120, 2124 (2014)).

[47] *Id*. at 1378.

[48] *Id*.

[49] *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011).

[50] '038 Patent col. 5, l. 1–2; col. 6, l. 57–59; col. 8, l. 1–3.

[51] Docket No. 53, at 2.

[52] *Biosig*, 783 F.3d at 1378 (quoting *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010)).

language."[53] "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention."[54] CMP argues that the disputed claim phrase fails to provide an objective standard from which to measure whether the indentation is closer to the center point of the central chamber than the lobe—if the lobe is undefined. Put another way, CMP argues that it is unclear to one skilled in the art, how and at which point on the lobe and indentation from which to make the "closer to" determination. This argument is unpersuasive.

"A patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement."[55] However, "the claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."[56] Though the '038 Patent does not specifically define "lobe" with actual parameters, the claim language, specification, and figures provide sufficient clarity for skilled artisans to determine whether each indentation is positioned closer to the center point of the central chamber than each lobe.

The specification teaches that "each lobe can be sized and shaped" differently and that "each indentation can be sized and shaped to facilitate flow of an aggregate hardening material around the manifold device."[57] The specification also teaches that "the central chamber can have

---

[53] *Id.*

[54] *Id.* (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)).

[55] *Invitrogen Corp.*, 424 F.3d at 1384.

[56] *Interval Licensing LLC*, 766 F.3d at 1371.

[57] '038 Patent col. 4, l. 7–9.

a top cross sectional shape of a lobed polygon with a lobe forming each corner of the polygon."[58] The patent figures show that the lobes extend outward, away from the central chamber, past the point of each indentation. Though the boundaries of each lobe are not defined, the patent language refers to the lobe as an entirety. Viewed as an entirety, one skilled in the art can reasonably and objectively determine whether each indentation is positioned closer to the center point of the central chamber than each lobe.

Moreover, the prosecution history of the '038 Patent supports the conclusion that the claim phrase in dispute is not indefinite. Under 35 U.S.C. § 282, a patent is presumed valid based on the underlying presumption that the United States Patent and Trademark Office ("USPTO") properly examined the claims in the first instance.[59] It is significant in this case that the USPTO rejected many claims in the very first Office Action issued during prosecution of the '038 Patent, but allowed the "closer to" limitation without amendment in independent claim 15 (as originally filed).[60] The USPTO's approval of the "closer to" language further supports VJS's claim for definiteness.

Accordingly, CMP fails to demonstrate by clear and convincing evidence that the '038 Patent, "when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'"[61] Therefore, the Court will deny CMP's Motion for Partial Summary Judgement and find the '038 Patent is not invalid for indefiniteness.

---

[58] *Id.* at col. 3, l. 66–67; col. 4, l. 1.

[59] *See* 35 U.S.C. § 282.

[60] Docket No. 53-1 Ex 7, at 4.

[61] *Biosig Instruments, Inc.*, 783 F.3d at 1377 (quoting *Nautilus II*, 134 S.Ct. at 2124).

III.     CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Determine Markman Issues (Docket No. 36) is construed in part and denied in part as set forth above.

It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 53) is DENIED.

The parties are directed to submit a scheduling order for the Court's signature within fourteen (14) days.

DATED this 11th day of August, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge